**In re Antonio DEL GROSSO, Debtor.**

**Bankruptcy No. 89 B 06606.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Feb. 15, 1990.

Terrence J. Mahoney, Thomas M. Breen, Walsh, Neville, Pappas & Mahoney, Chicago, Ill.

Michael R. Collins, Harold E. Collins & Assoc., Ltd., Chicago, Ill., for Melmark Cartage Co. and A.J. Exp., Inc.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the objection of Melmark Cartage Co., Inc. and A.J. Express, Inc. ("Melmark and A.J. Express") to the claims for attorneys' fees of Thomas M. Breen ("Breen") and the law firm of Walsh, Neville, Pappas & Mahoney ("Mahoney") arising from the settlement of a personal injury lawsuit (the "lawsuit") involving Antonio Del Grosso (the "Debtor"). For the reasons set forth herein, the Court hereby sustains the objection in part and denies secured status to the claims as either perfected statutory attorneys' liens or enforceable equitable liens. The Court will, however, allow Breen and Mahoney to file unsecured claims for their fees for work performed and expenses advanced in connection with the settlement of the lawsuit.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(a) of the United States District Court for the Northern District of Illinois. This objection constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (O).

## II. FACTS AND BACKGROUND

The Debtor filed a voluntary Chapter 11 petition on April 19, 1989. Prior to the filing of the case, the Debtor retained attorney Breen for the purpose of representing him in connection with a cause of action arising out of personal injuries he sustained in an automobile collision with Robert W. Vink. Pursuant to the written contingent fee agreement between the Debtor and Breen, the Debtor agreed to "pay Thomas M. Breen as compensation for his services, and hereby assign to him one-third of any sum obtained or recovered therefrom by suit, settlement or otherwise." Breen had an oral agreement by which he referred the Debtor's personal injury case to Mahoney and his law firm. Most of the relevant facts and background are contained in an earlier Opinion. *See In re Del Grosso*, 106 B.R. 165 (Bankr.N.D.Ill. 1989).

Breen and Mahoney represented the Debtor and filed the lawsuit prepetition. On August 23, 1989, Breen and Mahoney were retained as special counsel to the Trustee in order to pursue that action. Their retention as special counsel occurred after all the work was performed in connection with the lawsuit. Their efforts resulted in a settlement offer of $125,000.00. After the Court approved the settlement, further hearings were held regarding allowance, validity and amounts of all liens and assignments claimed to attach to the settlement proceeds. The lien of Thomas Toth, Sr. d/b/a Toth Automotive was allowed based upon a written assignment by the Debtor made to secure a judgment entered on January 18, 1989. All other asserted lien claims were disallowed because the claimants failed to appear and prove their alleged claims.

Breen claims one-third of the settlement proceeds under the contingent fee agreement. In addition, both Breen and Mahoney claim to have perfected statutory attorneys' liens and equitable liens attaching to the settlement proceeds. Melmark and A.J. Express object to the award of any compensation to Breen. They argue that Breen failed to meet the contractual obligations giving rise to the assignment and that he and Mahoney violated Rule 2–107 of the Illinois Code of Professional Responsibility, thus barring any award of compensation.

The Court held a hearing on the matter on December 6, 1989. Subsequently, on December 8, 1989, Breen and Mahoney

filed their documentation of time expended in connection with the lawsuit. Thereafter, the Court took the matter under advisement. Recently, the Trustee collected the $125,000.00 settlement proceeds.

## III. DISCUSSION

### A. METHODS OF SECURING ATTORNEYS' FEES

Federal courts look to state law to determine whether property is an asset of a debtor's estate. *In re K & L Ltd.*, 741 F.2d 1023, 1030 n. 7 (7th Cir.1984). Moreover, such substantive state law determines the nature of, interests in and perfection of liens or other encumbrances claimed in such property subject to administration in accordance with the Bankruptcy Code and Rules. *See generally In re Brass Kettle Restaurant*, 790 F.2d 574 (7th Cir.1986). In Illinois there are three traditional liens in favor of attorneys to secure their compensation. These liens are: 1) the common-law retaining or possessory lien; 2) the statutory lien pursuant to Ill.Rev. Stat. ch. 13, para. 14 (1987); .and 3) the equitable lien. *See generally* 4 Illinois Law and Practice, *Attorneys and Counselors* §§ 171–187 (1988 and 1989 Supp.).

A fourth manner in which attorneys occasionally secure their compensation is by the taking of a security interest under the Uniform Commercial Code. Perfection of a security interest in settlement proceeds requires the filing of a financing statement or possession of the proceeds. Ill.Rev.Stat. ch. 26, para. 9–203 (1987); *see e.g., In re Burnside Steel Foundry Co.*, 90 B.R. 942, 944 (Bankr.N.D.Ill.1988). The Debtor made no grant of a security interest in the settlement proceeds, hence no claim has been asserted by Breen or Mahoney under this theory.

The common law retaining or possessory lien is the right of the attorney to retain possession of property belonging to the client until the fees are paid or the attorney voluntarily surrenders the property with or without payment, thus extinguishing the lien. This lien, which is predicated upon possession by the attorney, is not applicable as the settlement proceeds were never held by Breen or Mahoney. All proceeds were recently paid to the Trustee who holds same, subject to further order. Hence, Breen and Mahoney only claim the statutory attorneys' liens and equitable liens. If they possess valid, perfected and enforceable statutory attorneys' liens, the Trustee would not be able to avoid their claims under Section 545 of the Bankruptcy Code. Such statutory attorneys' liens, if perfected, would be effective prior to commencement of the case (section 545(1)), would be enforceable against a bona fide purchaser of the cause of action (section 545(2)) and such claims for fees are neither rent (section 545(3)) nor liens for distress for rent (section 545(4)).

### B. THE ILLINOIS ATTORNEY'S LIEN ACT

Pursuant to the Illinois Attorney's Lien Act, Ill.Rev.Stat. ch. 13, para. 14 (1987), a lien can be created in favor of attorneys on all claims placed in their hands for suit or collection. The Attorney's Lien Act was originally enacted in 1909 and now states in pertinent part:

> Attorneys at law shall have a lien upon all claims, demands and causes of action, including all claims for unliquidated damages, which may be placed in their hands by their clients for suit or collection ... for the amount of any fee which may have been agreed upon by and between such attorneys and their clients.... To enforce such lien, *such attorneys shall serve notice in writing*, which service may be made by registered or certified mail, *upon the party against whom their clients* may *have such* suits, claims or *causes of action*, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action. Such lien shall attach to any verdict, judgment or order entered and to any money or property which may be recovered, on account of such suits, claims, demands or causes of action, from and after the time of service of the notice.

Ill.Rev.Stat. ch. 13, para. 14 (1987) (emphasis added).

The legislature enacted the statute to protect attorneys in the event of settlements made between the parties after service of the notice of attorney's lien. The Illinois Supreme Court has stated in regard to the purpose of the Attorney's Lien Act:

> [t]he object of the statute is to require notice of the existence of such claim to the party adverse to the client of the attorney claiming the lien, so that a hardship may not be imposed upon a litigant who makes and completes in good faith a settlement of the matters in litigation by creating a liability against him in favor of his opponent's attorney without notice of the attorney's lien.

*Catherwood v. Morris*, 360 Ill. 473, 479, 196 N.E. 519 (1935).

■ Because the attorney's lien is purely a creature of statute, the Act must be strictly complied with in order to establish a lien and ensure a right of an action for enforcement. *Crabb v. Robert R. Anderson Co.*, 117 Ill.App.2d 271, 275–276, 254 N.E.2d 551 (1969); *Unger v. Checker Taxi Co.*, 30 Ill.App.2d 238, 241, 174 N.E.2d 219 (1961). The requirements for an effective lien are set forth in the Illinois Supreme Court case *Rhoades v. Norfolk & Western Railway Co.*, 78 Ill.2d 217, 35 Ill.Dec. 680, 399 N.E.2d 969 (1979). In order to create an effective lien, the following must be present: 1) the attorney must have been hired by a client to assert a claim; 2) the attorney must perfect the lien by serving notice in writing; and 3) the notice must be served on the party against whom the client has the claim. *Id.* at 222, 35 Ill.Dec. 680, 399 N.E.2d 969. A fourth requirement that was not addressed by *Rhoades* is that the attorney must serve notice of the lien during the existence of the attorney-client relationship. This requirement is essential to perfecting the lien. *In re Kleckner*, 93 B.R. 143, 145 (N.D.Ill.1988); *Dept. of Public Works v. Exchange National Bank*, 93 Ill.App.3d 390, 394, 49 Ill.Dec. 218, 417 N.E.2d 1045 (1981).

■ Under the Attorney's Lien Act, the notice must be served by personal service or by registered mail. *Unger v. Checker Taxi Co.*, 30 Ill.App.2d at 242, 174 N.E.2d 219. These are the only modes of service acceptable under the Attorney's Lien Act. *See Cazalet v. Cazalet*, 322 Ill. App. 105, 108–109, 54 N.E.2d 61 (1944). Service must be on the party against whom the client may have his suit, claim or cause of action. Service on a party's attorney is insufficient to perfect the statutory lien. *Cazalet* at 108, 54 N.E.2d 61.

■ From the evidence adduced at trial, it is clear that Breen and Mahoney did not fully comply with the Attorney's Lien Act. Attached to the response to the objection was an unsigned notice of attorneys' lien on behalf of Breen and Mahoney, addressed to Telecommunication Contractors, Inc. Accompanying same was a copy of the return of service showing receipt by certified mail upon Telecommunication Contractors, Inc., through its alleged registered agent, CT Corporation System. A second copy of the same unsigned notice of attorneys' lien addressed to Robert Vink, in care of Hinshaw Culbertson, Moelmann, Hoban & Fuller, his attorneys, was also attached to the response. However, no return receipt acknowledging service on Vink or his attorneys was attached.

Although service was effectuated upon Vink's employer, and may have been made on his attorneys, there is no evidence that service was ever made on Vink himself. In fact, the notice of attorneys' lien is addressed to Vink in care of his attorneys. Breen and Mahoney were unable to produce a return receipt or other proof evidencing service upon Vink by either certified mail or personal service. *Cazalet* is clear that service upon a party's attorney is insufficient. Accordingly, the Court finds that Breen and Mahoney do not possess perfected liens pursuant to the Illinois Attorney's Lien Act and Section 545(2) of the Bankruptcy Code.

## C. EQUITABLE LIENS

■ Breen and Mahoney alternatively argue that their claims for fees should

be recognized as equitable liens because of the language in the fee agreement assigning one-third of the settlement proceeds to Breen. The written agreement, signed by the Debtor and Breen, expressly provides that the Debtor assigns to Breen one-third of any sum obtained. When an attorney and a client enter into a contract for a contingent fee imposed on the recovery of certain money or things, equity creates, by implication, a present lien on an existing res for the security of the attorney. *Lewis v. Braun*, 356 Ill. 467, 480, 191 N.E. 56 (1934).

The Seventh Circuit, in discussing equitable liens in *In re Brass Kettle Restaurant*, 790 F.2d 574 (7th Cir.1986) stated:

> [i]n Illinois, an equitable lien arises in two situations, the first of which occurs where the parties express in writing their intention to make a particular property, real or personal, or some fund, the security for a debt, or where there has been a promise to convey or assign the property as security. [Citations omitted] The essential elements of an equitable lien are (1) a debt, duty or obligation owing by one person to another, and (2) a res to which that obligation fastens. [Citations omitted].

*Id.* at 575.

The court found that the language, "Forty Percent (40%) of any recovery made", in a contingent fee agreement between an attorney and a client created an equitable lien. The court further noted that cases involving contingent fee contracts are not uniform and have all turned on the precise language contained in the fee agreement. *Id.* at 576 citing *McKee–Berger–Mansueto, Inc. v. Board of Education*, 691 F.2d 828, 836 (7th Cir.1982).

After examining the precise language in the fee agreement, it is clear that the Debtor assigned to Breen one-third of any sum obtained or recovered in connection with the lawsuit. The contract provides for an assignment to Breen alone and not to Mahoney. From the documentation submitted by Breen and Mahoney, it appears that Breen did very little work in connection with the lawsuit. At most, of the total 112 hours, he expended nine hours for phone calls and conferences in February and March 1988. In fact, Mahoney apparently performed all the necessary legal services in connection with the filing and settlement of the lawsuit. Thus, even though Breen may have an assignment from the Debtor, he did not perform any significant portion of the work pursuant to the fee agreement. On this showing, equity does not dictate a finding that Breen possesses an enforceable equitable lien. Breen should not be entitled to fees in excess of $40,000.00 for nine hours of work.

### D. ILLINOIS CODE OF PROFESSIONAL RESPONSIBILITY RULES 2–106 AND 2–107

Melmark and A.J. Express argue that Breen and Mahoney have violated Rule 2–107 of the Illinois Code of Professional Responsibility. Rule 2–107 provides:

(a) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm unless:

(1) the client consents in a writing signed by him to employment of the other lawyer, which writing shall fully disclose (a) that a division of fees will be made, (b) the basis upon which the division will be made, including the economic benefit to be received by the other lawyer as a result of the division, and (c) the responsibility to be assumed by the other lawyer for performance of the legal services in question;

(2) the division is made in proportion to the services performed and responsibility assumed by each, except where the primary service performed by one lawyer is the referral of the client to another lawyer and (a) the receiving lawyer fully discloses that the referring lawyer has received or will receive economic benefit from the referral and the extent and basis of such economic benefit and (b) the referring lawyer agrees to assume the same legal responsibility for the performance of the services in question as if he were a partner of the receiving lawyer; and

(3) the total fee of the lawyers does not exceed reasonable compensation for all legal services they rendered to the client.

(4) For purposes of this rule, "economic benefit" shall include (a) the amount of participation in the fee received with regard to the particular matter; (b) any other form of remuneration passing to the referring lawyer from the receiving lawyer, whether or not with regard to the particular matter; and (c) an established practice of referrals to and from or from and to the receiving lawyer and the referring lawyer.

(b) This disciplinary rule does not prohibit payment to a former partner or associate pursuant to a separation or retirement agreement.

Rule 2–107.

 The purpose of subparagraph (a)(1) of Rule 2–107 is to serve the best interests of the client. *Hofreiter v. Leigh,* 124 Ill.App.3d 1052, 1056, 80 Ill.Dec. 319, 465 N.E.2d 110 (1984). The legal rules of contract are not alone determinative in a controversy between attorneys, but there must also be compliance with the canons of professional ethics under the Court's supervision over contingent attorneys' fees. *Fitzgerald v. Freeman,* 409 F.2d 427, 428 (7th Cir.1969), *cert. denied,* 396 U.S. 875, 90 S.Ct. 151, 24 L.Ed.2d 134 (1969). The Illinois Supreme Court Rules, including the Code of Professional Responsibility, have the function of law and are a strong indicator of public policy in the area of attorney conduct. *Marvin N. Benn & Associates, Ltd. v. Nelsen Steel & Wire, Inc.,* 107 Ill.App.3d 442, 446–447, 63 Ill.Dec. 251, 437 N.E.2d 900 (1982).

The Debtor did not consent, in writing, to the employment of Mahoney or any division of fees or responsibility for performance of legal services between Breen and Mahoney. Moreover, Breen is not a partner or an associate with Mahoney's firm. Mahoney candidly admitted that the failure to procure the Debtor's consent was due to oversight. In addition, it is unclear as to the basis upon which the division of the fees is proposed to be made between Breen and Mahoney. Consequently, the Court finds that Breen and Mahoney have violated Rule 2–107.

 . Mahoney's argument that Rule 2–107 does not apply until the proceeds are in hand and ready to be divided is disingenuous and hereby rejected. No authority for this proposition has been cited. Furthermore, this argument would require written consent by a client only after all the work was performed and the proceeds collected and in the hands of the attorney. This interpretation of Rule 2–107 would place an unfair bargaining position upon a client who may not have consented to the referral, and is then in no position to withhold consent or object to the referral when the attorney holds the money. The result of this view is inherently unfair to the client and subverts the policy of full disclosure and informed advance consent by the client which both Rule 2–107 and Rule 2–106 are intended to foster.

Further critical to Mahoney's secured claim is the fact that he admittedly violated Rule 2–106(c)(2) by failing to obtain a separate written contingent fee agreement from the Debtor when he undertook to represent him and actually handled the lawsuit on Breen's referral. Rule 2–106(c)(2) expressly requires:

> Any contingent-fee agreement shall be in writing. The original and each copy shall be signed by the lawyer and by each client. One signed copy shall be provided to each client at the time of making the agreement, and one shall be retained by the lawyer. Any contingent-fee agreement shall set forth the precise method by which the fee is to be determined, including the percentage, or percentages, if any, to be applied in the event of settlement, trial or appeal, whether expenses are to be deducted before or after the contingent fee is calculated and any other factors relevant to the fee arrangement.

Rule 2–106(c)(2).

The Committee comments note that the Rule is designed to insure that both the lawyer and the client clearly understand the terms of their agreement from the be-

ginning until the termination of the services.

Both Breen and Mahoney failed to comply with the simple but clear mandate of Rules 2–106 and 2–107. Such violations bar enforcement of their equitable lien claims. Neither *Brass Kettle, McKee-Berger–Mansueto,* nor *Kleckner* involved violations of the Illinois Code of Professional Responsibility, which both Breen and Mahoney have committed. Such violations bar recovery under the equitable lien theory, as he who seeks equity is subject to the doctrine of unclean hands. *See generally Shondel v. McDermott,* 775 F.2d 859, 867–868 (7th Cir.1985); Chaffe, *Coming Into Equity With Clean Hands [I],* 47 Mich.L. Rev. 877, 880 (1949). While unethical conduct may not always bar attorneys' fees, it can affect the award of those fees, and in some cases, may be a complete bar to any recovery. *Talley v. Alton Box Board Co.,* 37 Ill.App.2d 137, 145–146, 185 N.E.2d 349 (1962).

Melmark and A.J. Express cite to the case *Leoris v. Dicks,* 150 Ill.App.3d 350, 103 Ill.Dec. 584, 501 N.E.2d 901 (1986), for the proposition that when a lawyer violates a Rule under the Code of Professional Responsibility, he forfeits any compensation he may have been entitled to receive. *Leoris* involved a fee splitting agreement between a discharged attorney and a newly retained attorney. The court found that such an agreement was unenforceable and void as violative of public policy. The discharged attorney argued that he was entitled to recover attorney's fees under the theory of *quantum meruit.* As to this argument, the court stated that the attorney was "foreclosed from recovery on the theory of *quantum meruit* because unprofessional conduct, as exhibited here, clearly violated stated canons of ethics that bar recovery. (citation omitted). Accordingly, we find that plaintiff's conduct, which clearly violated established canons of ethics, warrants forfeiture of his attorney fees." *Id.* at 354, 103 Ill.Dec. 584, 501 N.E.2d 901. *Leoris* is distinguishable as it involved fee splitting between a discharged and a newly retained attorney. This is not the situation at bar. Thus, that question of public policy is not involved.

Neither Breen nor Mahoney have duly perfected attorneys' liens nor are they entitled to enforceable equitable liens against the settlement proceeds. Their claims are therefore unsecured by virtue of the foregoing omissions and failures. To totally disallow any claim, especially for Mahoney, under the dicta in *Leoris,* would be an unduly harsh and inequitable result. Notwithstanding Mahoney's failure to perfect his claimed statutory attorney's lien, the Court recognizes that but for his efforts in filing and prosecuting the lawsuit, there would be no settlement proceeds for the benefit of the estate.

To completely bar Mahoney, and to a lesser extent Breen, from a pro rata share in the settlement proceeds would give the other unsecured creditors an effective windfall at the expense of Mahoney and Breen. Their failure to properly perfect a secured position in the settlement proceeds was the product of oversight and neglect, not inequitable conduct warranting effective subordination of their claims under Section 510 of the Bankruptcy Code. Such result would obtain if the objection is fully sustained. However, this result is unduly and unnecessarily harsh. The total forfeiture of fees is excessive. Consequently, the Court declines to absolutely bar the award of fees.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby sustains in part the objections of Melmark and A.J. Express to the classification of the claims for attorneys' fees to Breen and Mahoney as either perfected statutory attorneys' liens or enforceable equitable liens. Breen and Mahoney, however, will be allowed to file their claims for fees and expenses as unsecured claims.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.