**In re T.C. ASSOCIATES LIMITED PARTNERSHIP, an Illinois limited partnership, Debtor.**

**TRISKETT ILLINOIS, INC., Plaintiff,**

**v.**

**Carl F. DIXON and Beeler, Schad & Diamond, P.C., Defendants.**

**Bankruptcy No. 91 B 18144.
Adv. No. 93 A 00645.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Feb. 4, 1994.

Robert W. Newman, Charles S. Stahl, Jr., W. Scott Nehs, Wildman, Harrold, Allen & Dixon, Chicago, IL, for debtor.

Janet S. Baer, Neal L. Wolf, Laura A. Mondrowski, Winston & Strawn, Chicago, IL, for BOSP Investments.

Carl F. Dixon, Eugene W. Beeler, Jr., Beeler, Schad & Diamond, P.C., Chicago, IL, for Carl F. Dixon and Beeler, Schad & Diamond, P.C.

Kathryn L. Roseen, Law Offices of Kathryn L. Roseen, Chicago, IL, for Triskett Illinois, Inc.

Richard Friedman, Office of the U.S. Trustee, Chicago, IL.

Joseph A. Baldi, Elizabeth C. Berg, Rosenthal & Schanfield, Chicago, IL, for trustee.

### MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

## I. INTRODUCTION

Triskett Illinois, Inc., a secured and unsecured creditor of the Debtor, T.C. Associates Limited Partnership, initiated an adversary proceeding to determine the validity of an attorney's lien asserted by Triskett's former counsel, Carl F. Dixon and his law firm, Beeler, Schad & Diamond, P.C. (collectively, "Dixon"). Dixon asserts this state statutory lien against certain funds that are held in escrow as proceeds of the settlement of Triskett's unsecured claim. Triskett also alleges that Dixon violated Fed.R.Bankr.P. 9011(a) and asks the Court to impose monetary sanctions.

For the reasons discussed below, 1) Dixon's attorney's lien is invalid, and the Court will order the Escrowee to pay the settle-

ment proceeds to Triskett; 2) Dixon will be required to disgorge $7,623.50 that he improperly received pursuant to an earlier order of this Court; and 3) although Dixon violated Fed.R.Bankr.P. 9011(a), no additional monetary sanctions will be imposed.

## II. FINDINGS OF FACT

The underlying bankruptcy case began on August 27, 1991, when the Debtor filed its chapter 11 petition. The Debtor listed Triskett as a secured creditor in its bankruptcy schedules. Dixon represented Triskett.

Dixon ordinarily billed his clients at a maximum hourly rate of $190, but because of the long-term attorney-client relationship between Dixon and Triskett, Dixon had an agreement with Triskett to charge a maximum hourly rate of only $140 and to discount the rates of certain other timekeepers within Dixon's firm in connection with Dixon's representation of Triskett in this bankruptcy case. Dixon, however, did not disclose the existence of this discounted fee arrangement to the Court, the Debtor, the Trustee,[1] or any other party in interest; it first came to the Court's attention in conjunction with Triskett's adversary complaint, which was filed on May 25, 1993. Before that complaint was filed, Dixon recovered fees from the bankruptcy estate based upon his customary rates, not upon the discounted rates that he actually charged Triskett.

### A. Triskett's Claims Against the Bankruptcy Estate

Dixon, on Triskett's behalf, filed a Proof of Claim on September 5, 1991, in the amount of $762,262.94. On March 25, 1992, Dixon filed Triskett's "First Amended Proof of Claim" in the amount of $828,263.87, consisting of a secured portion of $522,231.93 and an unsecured portion of $306,031.94.

### 1. Secured Claim

On March 20, 1992, Dixon filed with the Court a "Motion of Secured Creditor Triskett Illinois, Inc. for Valuation and Allowance of

Its Secured Claim" (the "First Motion"), in which he alleged that Triskett's secured claim was $516,120.79, including $29,645.79 for attorney's fees and expenses. Four days later Dixon filed an "Amended Motion of Secured Creditor Triskett Illinois, Inc. for Valuation and Allowance of Its Secured Claim" (the "Second Motion"). The Second Motion is nearly identical to the First, except that it slightly modifies the monetary calculations.[2] In the Second Motion, Dixon valued Triskett's secured claim at $522,251.93, including attorney's fees and expenses of $29,745.68. The Second Motion contains an attachment that provides Dixon's individual time entries for his representation of Triskett in this matter.

Both the First and Second Motions quote Triskett's mortgage, the document upon which Triskett based its secured claim, which provides in relevant part:

"10. ... In any suit to foreclose the lien hereof, there shall be allowed and included as additional indebtedness in the decree for sale all expenditures and expenses which may be *paid or incurred by or on behalf of Mortgagee* for attorneys' fees.... All expenditures and expenses of the nature in this paragraph mentioned shall become so much additional indebtedness secured hereby and immediately due and payable...." (Emphasis added.)

First Mot., ¶ 12; Second Mot., ¶ 12. Both motions also allege as follows:

Through February 29, 1992, *Triskett has expended* $29,645.79 for its attorneys' fees, costs and expenses. *These fees, costs and expenses were incurred by Triskett* in connection with either the foreclosure or the bankruptcy case. *Triskett is entitled to recovery of these attorneys' fees, costs and expenses* under the terms of the loan documents. These fees, costs and expenses are fair, customary and reasonable charges for the services that were rendered, which were all deemed to be necessary in connec-

---

1. The Court approved the appointment of a chapter 11 Trustee on December 12, 1991.

2. Paragraph 14 of the Second Motion states as follows: "On March 20, 1992, Triskett filed [the

First Motion], which Motion contained an error in calculation. This Amended Motion is filed to correct that error."

tion with the protection of Triskett's rights in this litigation. (Emphasis added.)

First Mot., ¶ 13; Second Mot., ¶ 13.

BOSP Investments, the Debtor's limited partner, objected to Triskett's secured claim, in part because Dixon did not categorize his requested fees and expenses by subject matter within the representation. Consequently, the Court suggested that Dixon submit a detailed fee application in conjunction with Triskett's secured claim.

In response, on May 19, 1992, Dixon filed a "Motion for Secured Creditor Triskett Illinois, Inc. for Allowance of Its Amended Secured Claim" (the "Third Motion"). This motion contains a detailed application, itemized by subject matter, for $29,756.79, including $28,114.50 for attorney's fees and $1,642.29 for expenses. In this fee application, Dixon claimed hourly rates of $190 and $195 [3] for his and his partner's time, and he charged hourly rates ranging from $30 to $130 for activities performed by his clerks, paralegals, and associates. If this fee application is recalculated at the discounted rates agreed upon by Dixon and Triskett, then Dixon's fees and expenses total $22,022.29. [4]

The parties settled Triskett's secured claim, and on May 28, 1992, the Court entered an agreed order allowing Triskett's secured claim for $512,847.84. This order itemizes Triskett's allowed secured claim as follows: $450,000.00 in principal, $33,202.05 in interest, and $29,645.79 for "attorneys' fees and costs." The Trustee subsequently gave Dixon a check for $29,645.79 and remitted the balance owed on the allowed secured claim directly to Triskett.

On June 25, 1992, Dixon filed a "Motion for Secured Creditor Triskett Illinois, Inc. for Supplemental Allowance of Its Secured Claim" (the "Fourth Motion"). In this motion Dixon sought an additional $22,087.43 from the bankruptcy estate, purportedly for the attorney's fees and expenses that Triskett incurred from March 1 to May 31, 1992, in the prosecution of its secured claim. Dixon argued that the earlier fee application covered only the period before March 1, but that Triskett was entitled to receive all of the attorney's fees and expenses that it incurred in conjunction with its secured claim. This motion contains a detailed fee application in which Dixon charged a maximum hourly rate of $195.

The Trustee and BOSP Investments filed objections to the Fourth Motion. On August 25, 1992, the Court denied the Fourth Motion because it found that the May 28, 1992, agreed order constitutes a final settlement of Triskett's secured claim, and that order contains no reservation of Triskett's right to apply for additional attorney's fees and expenses.

### 2. Unsecured Claim

The Trustee filed an objection to Triskett's $306,031.94 unsecured claim on July 16, 1992. Four months later Dixon and the Trustee's attorney met to discuss that claim. At this meeting the Trustee's attorney made an offer to settle Triskett's unsecured claim for $10,000. In a letter dated January 18, 1993, Dixon communicated to Triskett his receipt of this offer and his recommendation that Triskett reject it.

Two months later, on March 10, 1993, at Triskett's request, all of the interested parties met in an effort to resolve Triskett's unsecured claim. Present at this meeting were Dixon, Triskett's Executive Vice President and Chief Financial Officer (Mr. James W. McHale), the Trustee, the Trustee's attorney, and BOSP Investments' attorneys. The parties discussed their respective positions and arguments, and the Trustee restated to Triskett his offer to settle its unsecured claim for $10,000.

Two days thereafter Mr. McHale telephoned the Trustee's attorney to make a counteroffer to settle Triskett's unsecured claim for $20,000. Mr. McHale also informed the Trustee's attorney that Dixon no longer represented Triskett.

---

**3.** Dixon billed at a rate of $190 per hour for work performed in 1991 and $195 per hour for work performed in 1992.

**4.** To perform this calculation the Court used the rates and time entries set forth in Exhibit D of Triskett's complaint. Triskett's calculations in that exhibit contain a mathematical error, which the Court has corrected.

On March 18, 1993, pursuant to the Trustee's direction, the Trustee's attorney communicated to Mr. McHale the Trustee's offer to settle for $15,000. Mr. McHale accepted this offer on behalf of Triskett four days later, and the Court entered an agreed order reflecting this settlement on April 29, 1993.

### B. Dixon's Attorney's Lien

A dispute developed between Dixon and Triskett after the March 10, 1993, meeting. Dixon filed an "Emergency Motion to Withdraw as Counsel" for Triskett on March 23, 1993, and the Court granted that motion on March 30, 1993.

The next day Dixon served the Trustee with notice that he claimed an attorney's lien "upon any proceeds arising out of or related to" Triskett's claims against the bankruptcy estate, pursuant to an Illinois statute, 770 ILCS 5/1 (1993). Dixon filed his "Notice of Attorney's Lien" with the Court on April 1, 1993.

In the April 29, 1993, agreed order settling Triskett's unsecured claim for $15,000, the Court directed the Trustee to hold the settlement funds "pending further order of this Court regarding the disposition of the Attorney's Lien asserted against said funds."

On May 25, 1993, Triskett filed an adversary complaint against Dixon. The three counts contained in the complaint are as follows: "Count One—Procedural Invalidity of the Claimed Lien," "Count Two—Substantive Invalidity of the Claimed Lien," and "Count Three—Sanctions for Violation of Rule 9011."

In conjunction with the July 29, 1993, Final Decree and order discharging the Trustee, the Court ordered the Trustee to pay the $15,000 settlement proceeds to the attorney representing Triskett in this adversary proceeding, "as escrowee." The Escrowee was then ordered to hold these funds "in an interest-bearing account to be distributed solely upon further order of this Court upon the resolution of the Adversary Proceeding."[5]

## III. CONCLUSIONS OF LAW

### A. Attorney's Lien

As discussed in detail below, the Court concludes that Dixon's purported attorney's lien is procedurally invalid. Consequently, the Court does not reach the question of the substantive validity of this lien.

#### 1. Procedural Validity[6]

■■■ Dixon claims an attorney's lien on the proceeds of the settlement of Triskett's unsecured claim against the bankruptcy estate pursuant to an Illinois statute, 770 ILCS 5/1 (1993). In order for his lien to be valid, Dixon must strictly comply with the requirements of this statute. *See In re Del Grosso,* 111 B.R. 178, 182 (Bankr.N.D.Ill.1990) ("Because the attorney's lien is purely a creature of statute, the Act must be strictly complied with in order to establish a lien and ensure a right of an action for enforcement.").

■■■ One of these requirements is that "the attorney must serve notice of the lien during the existence of the attorney-client relationship. This requirement is essential to perfecting the lien." *Id.; see also Rhoades v. Norfolk & W. Ry. Co.,* 78 Ill.2d 217, 227, 35 Ill.Dec. 680, 685, 399 N.E.2d 969, 974 (1979) ("Thus, by the time the firm attempted to perfect its lien, there was no longer an underlying attorney-client relationship, a necessity for the perfection of the attorney's lien."); *Department of Pub. Works v. Exchange Nat'l Bank,* 93 Ill.App.3d 390, 394, 49 Ill.Dec. 218, 221, 417 N.E.2d 1045, 1048 (2d Dist.1981) ("The filing of notice of lien by an attorney during the existence of the attorney-client relationship is a prerequisite for perfecting the statutory attorney's lien.").

Dixon's attorney-client relationship with Triskett was terminated (at the latest) on

---

**5.** The Court's determination of the validity of Dixon's attorney's lien affects the disposition of these proceeds because the confirmed Plan of Liquidation calls for the full payment of all allowed unsecured claims.

**6.** The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 & 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) ("matters concerning the administration of the estate") & (K) ("determinations of the validity, extent, or priority of liens").

March 30, 1993, when this Court granted Dixon's motion for leave to withdraw as Triskett's attorney, but Dixon did not serve notice of his attorney's lien on the Trustee until the next day. Therefore, Dixon's purported attorney's lien is procedurally invalid and unenforceable.

### 2. Substantive Validity

The second count of Triskett's adversary complaint avers that Dixon's attorney's lien is substantively invalid because there is no debt owed by Triskett to Dixon. Since the Court has determined that Dixon did not meet the procedural requirements for asserting a state statutory attorney's lien, it need not decide this substantive question. Indeed, in light of the decision that Dixon's attorney's lien is procedurally invalid, this Court may not have jurisdiction to adjudicate Dixon's contractual right to payment from Triskett.

### B. Disgorgement[7]

Pursuant to this Court's order dated May 28, 1992, Dixon received "attorneys' fees and costs" totalling $29,645.79 directly from the Trustee in conjunction with the settlement of Triskett's secured claim against the bankruptcy estate. For the reasons discussed in detail below, although no party has requested this relief, the Court, on its own motion, will require Dixon to disgorge $7,623.50.

### 1. Factors Compelling Disgorgement

■ In the course of this adversary proceeding to determine the validity of Dixon's attorney's lien, it came to the Court's attention that this sum was computed based upon Dixon's regular hourly billing rates, not upon the discounted rates that Dixon negotiated with Triskett. Indeed, Dixon never disclosed to this Court nor to the interested parties that his actual fees were less than the amount he claimed in the First, Second, Third, and Fourth Motions.

To the contrary, in the First and Second Motions, Dixon stated that "Triskett has expended" the amount requested for fees and that "[t]hese fees ... were incurred by

Triskett." *See* Part II.A.1. above. These statements are false.

■ The bankruptcy code provides that to the extent that a secured creditor is oversecured, "there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." 11 U.S.C. § 506(b). The significant aspect of this provision is that "the *holder* of such claim"—the *creditor*, not the creditor's *attorney*—is entitled to the allowance of these fees. Accordingly, a secured claim that includes such fees may be allowed only to the extent that the secured creditor actually incurs these "fees, costs, or charges." Moreover, Triskett's mortgage only provides for the reimbursement of fees that are "paid or incurred by or on behalf of" Triskett. *See* Part II.A.1. above.

In the instant case, Triskett did not actually pay or incur attorney's fees and expenses totalling $29,645.79. At the discounted rates that Dixon agreed to charge Triskett, Triskett owed Dixon only $22,022.29, and Triskett's secured claim should have included fees in that amount. In short, Dixon received from the bankruptcy estate $7,623.50 in excess of the amount that Triskett actually owed to Dixon for attorney's fees and expenses.

■ In addition, an oversecured creditor's claim for attorney's fees must be "reasonable." 11 U.S.C. § 506(b); *see also In re Wire Cloth Prods., Inc.*, 130 B.R. 798, 814 (Bankr.N.D.Ill.1991); *In re Stoecker*, 114 B.R. 980, 983 (Bankr.N.D.Ill.1990); *In re Josephs*, 108 B.R. 654, 656 (Bankr.N.D.Ill. 1989). "The Court has broad discretion to determine what constitutes a 'reasonable' fee." *Stoecker*, 114 B.R. at 983. This Court concludes that it is manifestly unreasonable, and indeed clearly improper, for Dixon to receive attorney's fees from the bankruptcy estate that are computed at hourly rates that are greater than the rates that Dixon agreed to charge his client, the secured creditor.

---

7. This matter is also a core proceeding, pursuant to 28 U.S.C. §§ 157(b)(2)(A) ("matters concerning the administration of the estate") & (B) ("allowance or disallowance of claims against the estate").

For these reasons, Dixon will be ordered to disgorge $7,623.50, the sum that he improperly received, to the Trustee.[8]

### 2. Court's Authority To Order Disgorgement

■ The Court has the authority to order this relief pursuant to Fed.R.Bankr.P. 9024 ("Rule 60 F.R.Civ.P. applies in cases under the Code....") and Fed.R.Civ.P. 60(b), which provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... or (6) any other reason justifying relief from the operation of the judgment....

In this case, for the reasons stated in Fed.R.Civ.P. 60(b)(3) & (6), the Court relieves the Trustee from the May 28, 1992, order that required the Trustee to pay excessive attorney's fees to Dixon.

Moreover, the Court's action is procedurally proper. Fed.R.Bankr.P. 3008 provides that "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order." This Court has the authority to act on its own motion, notwithstanding the absence of a party's motion, pursuant to 11 U.S.C. § 105(a), which provides as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court

orders or rules, or to prevent an abuse of process.

The relevant issues were raised in the pleadings and were fully developed at trial. Accordingly, Dixon had ample notice and an adequate hearing.

■ Finally, Dixon's violation of Fed. R.Bankr.P. 9011(a), *see* Part III.C.1. below, is an alternative basis for ordering this relief. In its adversary complaint, Triskett expressly alleged that Dixon violated Rule 9011(a) by signing the motions requesting fees. That Rule authorizes the Court to impose appropriate sanctions. Although the Court is not awarding monetary sanctions to Triskett, Rule 9011(a) also provides authority for the Court's order that Dixon disgorge $7,623.50.

### C. Federal Rule Of Bankruptcy Procedure 9011(a)

In the third count of its adversary complaint, Triskett alleges that Dixon violated Fed.R.Bankr.P. 9011(a) by signing the motions seeking the allowance of Triskett's secured claim, and it asks the Court to impose monetary sanctions.[9] The Court concludes that Dixon violated Rule 9011(a), but it orders no sanctions other than the disgorgement discussed in Part III.B.1. above and the publication of this opinion.

### 1. Dixon's Violation Of Rule 9011(a)

Fed.R.Bankr.P. 9011(a) provides in pertinent part:

> **SIGNATURE.** Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney ... shall be signed by at least one attorney of record.... The signature of an attorney ... constitutes a certificate that the attorney ... has read the document; that to the best of the attorney's ... knowledge, information, and belief formed after reasonable

---

8. This case was closed and a final decree was entered on July 29, 1993. Consequently, the Court must reopen the case pursuant to 11 U.S.C. § 350(b) ("A case may be reopened ... to administer assets....") so that the Trustee may administer this asset of the estate in accordance with the confirmed Plan of Liquidation.

9. As a technical matter, Triskett should have raised this allegation in a motion rather than as a "count" within an adversary complaint. However, since no party objected to this "count" of Triskett's complaint on procedural grounds (and, in any event, the Court may always impose Rule 9011(a) sanctions on its own initiative), the Court will treat Triskett's allegation as if it were raised in the proper manner.

inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, or to cause unnecessary delay, or needless increase in the cost of litigation or administration of the case. If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Courts have frequently explained that "[t]he Rule contains several strands. There must be 'reasonable inquiry' into both fact and law; there must be good faith (that is, the paper may not be interposed 'to harass'); the legal theory must be objectively 'warranted by existing law or a good faith argument' for the modification of existing law; and the lawyer must believe that the complaint is 'well grounded in fact'. The attorney filing the complaint or other paper must satisfy all four requirements."

*E.g., In re Chapman,* 154 B.R. 258, 265 (Bankr.N.D.Ill.) (quoting *Thompson v. Duke,* 940 F.2d 192, 195 (7th Cir.1991), which was quoting *Szabo Food Serv., Inc. v. Canteen Corp.,* 823 F.2d 1073, 1080 (7th Cir.1987), *cert. dismissed,* 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988)), *aff'd sub nom. Chapman v. Burton Berger & Assocs., Ltd.,* 159 B.R. 812 (N.D.Ill.1993). In the instant case, at least two of these "strands" ("well grounded in fact" and "warranted by existing law or a good faith argument") were not satisfied.

### a. "Well Grounded In Fact"

■ In the First, Second, Third, and Fourth Motions, each signed by Carl F. Dixon, Dixon sought attorney's fees as a part of Triskett's secured claim. *See* Part II.A.1. above. In each motion Dixon calculated his fees based upon the hourly rates that he customarily charged his clients, not upon the discounted rates that he actually charged Triskett. Accordingly, the Court concludes that these motions are not "well grounded in fact" and that Dixon could not have believed otherwise because Dixon knew that Triskett did not actually incur the fees that Dixon sought as part of Triskett's secured claim. *See also* Part III.B.1. above.

### b. "Warranted By Existing Law or a Good Faith Argument For the Extension, Modification, or Reversal Of Existing Law"

■ The Court also concludes that Dixon's inflated requests for attorney's fees in these motions were not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." As discussed in Part III.B.1. above, the "existing law" is clear that an oversecured creditor is entitled to receive attorney's fees as part of its allowed secured claim only to the extent that it actually incurs those fees and those fees are reasonable. Even if 11 U.S.C. § 506(b) were not clear, Triskett's mortgage plainly limits Triskett and Dixon's right to receive attorney's fees to those amounts "paid or incurred by or on behalf of" Triskett. *See* Part II.A.1. above.

■ Dixon cannot convincingly claim that his overreaching requests for fees constitute a "good faith argument for the extension, modification, or reversal of existing law" because Dixon never revealed the fee arrangement with Triskett. It was not until the adversary proceeding was filed that the discounted fee arrangement came to light.

■ At best, Dixon exhibited an indefensible blindness to the impropriety of his acts in signing the First, Second, Third, and Fourth Motions requesting inflated attorney's fees. At trial Dixon testified as follows:

THE COURT: So your agreement with Triskett was that Triskett would not be responsible for more than $140 per hour; is that correct?

THE WITNESS [Carl F. Dixon]: That is correct.

THE COURT: But that if you could recover any additional fee at a higher rate

from a third-party payor, that was okay with Triskett?

THE WITNESS: That was indeed okay with Triskett.

R. at 88.[10] However, Dixon's "agreement" that he was entitled to receive "additional fee[s] at a higher rate," when such fees were paid by the bankruptcy estate, was not disclosed in the motions requesting fees. Instead, those motions stated only that the requested fees had been incurred by Triskett.

Therefore, since Dixon's statements regarding his fees were neither factually correct nor legally justified, the Court concludes that Dixon violated Fed.R.Bankr.P. 9011(a).

### 2. Sanctions

 "The amount and nature of sanctions to be imposed [are] left to the discretion of the Court." *In re Zussman*, 157 B.R. 404, 411 (Bankr.N.D.Ill.1993) (citing *Insurance Benefit Adm'rs, Inc. v. Martin*, 871 F.2d 1354, 1359 (7th Cir.1989); *Frantz v. United States Powerlifting Fed'n*, 836 F.2d 1063, 1066 (7th Cir.1987); *Diversified Technologies Corp. v. Jerome Technologies, Inc.*, 118 F.R.D. 445, 453 (N.D.Ill.1988)). Here, no sanctions are warranted beyond the previously ordered disgorgement and the publication of this opinion.

Triskett prays for "[a]n Order directing defendants to pay Triskett's costs, expenses and attorneys fees incurred in bringing this Motion [Complaint?]." The statements that

subject Dixon to sanctions, however, were made on behalf of Triskett. Although there is no clear evidence that Triskett authorized Dixon's misconduct, Triskett only brought that misconduct to this Court's attention as part of its attack on Dixon's lien claim. Triskett suffered no harm as a result of Dixon's conduct and is not entitled to monetary sanctions, nor is there any showing that other parties incurred additional expenses because of Dixon's violation of Rule 9011(a).

Dixon was wrong to have claimed fees on behalf of Triskett in an amount greater than that to which Triskett was entitled. He was particularly wrong to have made that claim without disclosing his discounted fee arrangement with Triskett—obviously a material fact—to the Court or to opposing parties. Nevertheless, the Court's order for Dixon to disgorge the improperly claimed amount and the publication of this opinion are sufficient sanctions. Therefore, although the Court concludes that Dixon violated Fed. R.Bankr.P. 9011(a), it will deny Triskett's request for monetary sanctions.

## IV. CONCLUSION

Dixon's purported attorney's lien on the proceeds of Triskett's settlement of its unsecured claim against the bankruptcy estate is procedurally invalid. Further, the Court finds that Dixon violated Fed.R.Bankr.P. 9011(a) and directs Dixon to disgorge that

---

**10.** With regard to this statement, which Dixon made at the trial before this Court on August 10, 1993, the Court notes that no other evidence indicates that Triskett was involved in concealing Dixon's attempts to recover inflated fees. In fact, Mr. McHale's letter to Dixon dated March 23, 1993, which was admitted into evidence at the trial, tends to show that Triskett first became aware of Dixon's scheme immediately before that date. Further, Triskett's alleged involvement in Dixon's attempts to extract inflated fees from the bankruptcy estate, even if it were true, does not absolve Dixon from his Rule 9011(a) duties and potential liabilities.

Two other statements that Dixon made in the course of this proceeding suggest Dixon's attitude of indifference to the allegations in the motions that he signed and to his obligation of candor to this Court:

Defendants deny the allegations contained in Paragraph 22 [of Triskett's complaint] and further state that the fee applications were not

inflated; the rate submitted is the rate charged by Defendants in such matters. Due to the unique relationship between Triskett and Defendants, certain billing concessions were made to Triskett which are permitted by the counts [courts?].

Defs.' Answer, at ¶ 22.

The fact that the rates agreed to by BOSP and the trustee [in the settlement of Triskett's secured claim] were at the customary fees charged by Defendant, rather than at the special fees charged to Plaintiff for other matters, does not violate Rule 9011 because the fees for work on the *secured claims* were not the responsibility of Plaintiff but were, in fact, the responsibility of the bankrupt, TC Associates, pursuant to the provisions of the mortgage which secured Plaintiff's interest in certain of its properties.

Def.'s Post Hr'g Br. & Argument, at 8 (emphasis in original).

**150**

portion of fees that was improperly awarded. Appropriate orders will be entered.

### ORDER

For the reasons stated in the Memorandum Opinion of even date, which is docketed in Adversary Case Number 93 A 00643, **IT IS HEREBY ORDERED THAT:**

1. The case is **REOPENED** pursuant to 11 U.S.C. § 350(b).

2. The Order dated May 28, 1992, is **AMENDED** as set forth below to reflect a reduction in the allowed secured claim of Triskett Illinois, Inc. This reduction results from the disallowance of $7,623.50 in attorney's fees that were improperly included as a component of Triskett's allowed secured claim. The second paragraph of the Order dated May 28, 1992, is **STRICKEN,** and the following paragraph is **INSERTED** in its place:

> IT IS HEREBY ORDERED that the secured portion of Claim Number 28 of Triskett Illinois, Inc., filed on March 25, 1992, in the amount of $522,231.93, is hereby allowed in the amount of $505,224.34 (representing $450,000.00 in principal, $22,022.29 in attorney's fees and costs, and $33,202.05 in interest), and the balance of the secured portion of Claim Number 28, in the amount of $17,007.59, is hereby disallowed without prejudice to the remaining unsecured portion of Claim Number 28.

3. Carl F. Dixon and Beeler, Schad & Diamond, P.C., Defendants in Adversary Case Number 93 A 00645, shall disgorge to the Trustee $7,623.50 within 10 days after the entry of this Order and shall be held jointly and severally liable for this sum.

4. The Trustee shall administer this asset in accordance with the confirmed Plan of Liquidation.

5. The case is set for Report on Status on Thursday, February 24, 1994, at 10:00 AM, in Courtroom 615 of the Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois.

### ORDER

For the reasons stated in the Memorandum Opinion of even date, the Court renders **JUDGMENT** as follows:

*Count I:* **JUDGMENT** for the Plaintiff. The attorney's lien claimed by the Defendants is invalid. The Escrowee is **ORDERED** to distribute to the Plaintiff the funds in escrow that represent the settlement of the Plaintiff's unsecured claim.

*Count II:* **JUDGMENT** for the Defendants, without prejudice.

*Count III:* The Court treats this Count as the Plaintiff's Motion for Monetary Sanctions pursuant to Fed.R.Bankr.P. 9011(a). The Court finds that Defendant Carl F. Dixon violated Fed.R.Bankr.P. 9011(a), but it awards no monetary sanctions to the Plaintiff. Accordingly, the Plaintiff's Motion is **GRANTED** to the extent that it requests a finding of Carl F. Dixon's violation of Fed.R.Bankr.P. 9011(a) and **DENIED** to the extent that it requests an award of monetary sanctions to the Plaintiff. This Order is entered without prejudice to the imposition of other sanctions by the Court.

All other relief requested by any party is **DENIED.**