THE DEPARTMENT OF PUBLIC WORKS, Plaintiff, *v.* EXCHANGE
NATIONAL BANK, Trustee, *et al.*, Defendants-Appellants.—(THOMAS T.
BURKE, Petitioner-Appellee and Cross-Appellant, *v.* G. DANA TOKOPH *et al.*,
Respondents-Appellants and Cross-Appellees.)

Second District    No. 80-429

Opinion filed February 19, 1981.—Rehearing denied March 24, 1981.

Michael A. Braun and Bernard L. Rivkin, both of Feiwell, Galper & Lasky, Ltd., of Chicago, for appellants.

William E. Ryan and Edward E. Egan, both of Burke & Ryan, of Chicago, for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

Defendant, Exchange National Bank, as trustee, and respondents, G. Dana Tokoph and Alice K. Tokoph, bring an interlocutory appeal, and petitioner, Thomas T. Burke, brings an interlocutory cross-appeal from an order entered in an eminent domain proceeding which directed disbursement to respondents of all funds deposited by the condemning body except $150,440 which was directed to be held subject to a hearing of Attorney Burke's petition to enforce an attorney's lien filed in this case.

Petitioner Burke was originally retained as legal counsel by respondents to represent them in eminent domain proceedings in which the Illinois Department of Public Works and Buildings sought to take approximately 16 acres of land held by the defendant-bank as trustee for the benefit of respondents. An agreement dated November 30, 1970, was entered into by Burke and the Tokophs which provided in pertinent part:

> "We hereby agree to pay to you total attorneys' fees * * * an amount equal to 28% of the increase obtained from the condemning body over the amount of $132,200.00, * * *."

Burke then undertook representation of the Tokophs, and, in due course, a jury in the condemnation proceeding returned a verdict awarding $253,000 for the property taken and damages to the remainder.

Review of this award was sought by respondents, with Burke serving as their appellate counsel, and this court reversed and remanded for a new trial. (*Department of Public Works & Buildings v. Exchange National Bank* (1975), 31 Ill. App. 3d 88, 334 N.E.2d 810.) Following the appeal, the Tokophs dismissed Burke as their attorney. On September 11, 1975, after he was discharged by respondents, Burke served notice of an attorney's lien on the condemning body in which he claimed a $150,000 interest in the condemnation fund. Subsequently, with other counsel representing the Tokophs, a second jury verdict fixed just compensation

for the property at $669,500 and the State deposited $982,450 with the Du Page County Treasurer representing the award together with interest of $312,950.

On April 4, 1979, respondents filed an application in this case to withdraw the condemnation award, and on that same day Burke filed his petition to enforce an attorney's lien and sought withdrawal of $238,070 pursuant to his contingent fee contract (that being 28% of the amount that the full award to respondents of $982,450, including interest exceeded $132,200). The circuit court ordered disbursement to respondents of all funds in excess of $238,070, which sum it ordered held subject to the hearing of Burke's pending petition. The Tokophs thereafter filed motions to dismiss Burke's petition and an application for final withdrawal of the $238,070 remaining on deposit with the county treasurer. On April 25, 1980, Burke requested leave to file a three-count amended petition to enforce an attorney's lien: count I sought enforcement of a lien in the sum due under the contingent fee contract; count II sought a personal judgment against respondents for the reasonable value of the legal services rendered; and count III pleaded an equitable lien theory of recovery.

Leave to file counts I and III of the amended petition was denied by the trial court. It determined that Burke could not enforce his contingent fee contract after discharge by his clients nor claim an equitable lien against the condemnation fund. Burke was granted leave to file count II, amended to include a prayer for relief under the attorney's lien act (Ill. Rev. Stat. 1979, ch. 13, par. 14). Burke did so on May 30, 1980, and on June 5, the trial court released $87,626 to respondents, withholding $150,444 subject to a hearing of Burke's petition for fees. The Tokophs filed notice of interlocutory appeal pursuant to Supreme Court Rule 307 (Ill. Rev. Stat. 1979, ch. 110A, par. 307), and Burke has cross-appealed.

Respondents' primary contention on appeal is that Burke failed to timely perfect his statutory attorney's lien as his notice of lien was not filed until after they had discharged him as their attorney. They also argue that even if the notice of lien had been served in apt time the amount set forth therein ($150,000) precluded the court from adding another $444 to the potential lien amount. Burke in his cross-appeal contends that (1) he properly perfected his statutory lien or, in the alternative, has an equitable lien, and (2) the court erred in not enforcing the parties' contingent fee contract by granting him the agreed percentage of the total award including the interest earned by the condemnation fund.

■■ We consider first Burke's contention that the court erred in not enforcing the parties' contingent fee contract. Burke argues that the trial court misconstrued the supreme court's opinion in *Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 399 N.E.2d 969, in finding he could

not rely upon the contingent fee contract for recovery after being discharged. We do not agree. The court in *Rhoades* appears to have abandoned its former view of the enforceability of contingent fee contracts and concluded that an attorney discharged by his client without cause before final judgment or settlement is not entitled to recover contract fees but is limited to reasonable fees for services rendered. 78 Ill. 2d 217, 229, 399 N.E.2d 969, 974; see also *Tobias v. King* (1980), 84 Ill. App. 3d 998, 1002, 406 N.E.2d 101, 104; *In re Estate of Murphy* (1978), 56 Ill. App. 3d 1037, 1040, 372 N.E.2d 878, 881; *Johnson v. Long* (1973), 15 Ill. App. 3d 506, 508, 305 N.E.2d 30, 32; *Ambrose v. Detroit Edison Co.* (1975), 65 Mich. App. 484, 491-92, 237 N.W.2d 520, 524.

In *Rhoades* the attorney was discharged by his client without a single business day elapsing following the signing of their employment contract, whereas in the present case Burke was employed by his clients for a five-year period and set the stage through trial and appellate proceedings for a substantial award to the Tokophs. Nevertheless, *Rhoades* may not be read so narrowly as suggested by Burke in urging it has a limited application. The court questioned the rationale for the former Illinois rule; it discussed *Fracasse v. Brent* (1972), 6 Cal. 3d 784, 494 P.2d 9, 100 Cal. Rptr. 385 and agreed with its reasoning and, in our view, adopted *quantum meruit* as the measure of compensation for Illinois attorneys discharged by their clients. We note, however, that "in cases in which an attorney who has done much work is fired immediately before a settlement is reached, the factors involved in determining a reasonable fee would justify a finding that the entire contract fee is the reasonable value of services rendered." *Rhoades*, 78 Ill. 2d 217, 230, 399 N.E.2d 969, 975.

■■ We next consider whether Burke can enforce an attorney's lien against the fund created in the condemnation proceedings. Both statutory and equitable liens exist in Illinois which attorneys may enforce in order to collect their fees. The attorney's lien act (Ill. Rev. Stat. 1979, ch. 13, par. 14) provides:

"Attorneys at law shall have a lien upon all claims, demands and causes of action, * * * which may be placed in their hands by their clients for suit or collection, * * * for the amount of any fee which may have been agreed upon by and between such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee, for the services of such attorneys rendered or to be rendered for their clients * * *. To enforce such lien, such attorneys shall serve notice in writing, * * * upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action. Such lien shall attach to any verdict, judgment or order entered and to any money or

property which may be recovered, * * * from and after the time of service of the notice."

■■■ Burke did not perfect his statutory attorney's lien, however, as his notice of lien was not served on the condemning body in apt time. The filing of notice of lien by an attorney during the existence of the attorney-client relationship is a prerequisite for perfecting the statutory attorney's lien. (*Rhoades*, 78 Ill. 2d 217, 227, 399 N.E.2d 969, 973-74.) Burke has not disputed that he was discharged by respondents, thus terminating the attorney-client relationship, prior to the date on which he served his notice of lien on the condemning body. He has attempted to distinguish *Rhoades* on the grounds that the statutory notice of lien is serviced only on the nonclient party, not the attorney's client, and while the nonclient party in *Rhoades* complained of the late notice, here the clients are objecting but without having standing to do so. Burke's argument, however, fails to account for the fact that the nonclient party in *Rhoades* had previously agreed to indemnify the client for his attorney's fees and that here the Tokophs were responsible for their own attorney's fees. We cannot distinguish *Rhoades* on this basis and therefore determine Burke is unable to rely on a statutory attorney's lien theory.

■■■ Burke alternately asserts an equitable lien which is not dependent upon timely service of notice of lien. The circuit court found Burke could not establish such a lien because there was no agreement that he was to look to the condemnation fund rather than respondents personally for payment. To assert an equitable lien, the attorney must establish the existence of an equitable assignment by his client to him of a portion of a fund. (*Cameron v. Boeger* (1902), 200 Ill. 84, 92, 65 N.E. 690, 693.) There is a clear distinction between an assignment of a portion of a fund and a mere personal promise by the client to pay attorney's fees in the amount of a portion of the fund recovered or collected. (*Marcus & Marcus & Orr v. Wilson* (1973), 16 Ill. App. 3d 724, 732, 306 N.E.2d 554, 560-61.) A personal contingent fee agreement does not grant an attorney an equitable lien against the fund the client might draw upon to pay attorney's fees. (See *Anastos v. O'Brien* (1972), 3 Ill. App. 3d 1015, 1020, 279 N.E.2d 759, 763.) The plain language of the Tokophs' contract with Burke stated "we hereby agree to pay you * * * an amount equal to [28% of recovery over $132,200]." The contract obviously constituted nothing more than a personal promise to pay for legal services and did not purport to assign an equitable interest in the condemnation fund. The court correctly determined Burke had no equitable attorney's lien to enforce against respondents' condemnation award.

As we have held both Burke's contingent fee agreement and attorney's lien unenforceable, we need not consider the arguments relating

to the limits of such a lien or whether the contingent fee contract would reach the interest earned by the award.

The order of the Circuit Court of Du Page County is affirmed insofar as it ordered partial disbursement of funds to respondents and the injunction against disbursement of the $150,444 is reversed. The cause is remanded for further proceedings.

Affirmed in part; reversed in part; remanded.

REINHARD and UNVERZAGT, JJ., concur.