JOSEPH J. LA ROCCO, Plaintiff-Appellant, *v.* EDWARD M. BAKWIN *et al.*, Defendants-Appellees.

Second District 81—983

Opinion filed August 17, 1982.

David P. List, J. Andrew Schlickman, and Donald L. Homyk, all of Sidley and Austin, of Chicago, for appellant.

David S. Acker and Steven J. Goldberg, both of Winston and Strawn, of Chicago, and Lester Munson, of Smith and Munson, of Wheaton, for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Joseph J. La Rocco, an attorney, filed a two-count complaint for breach of an oral lifetime employment contract against defendant, Edward M. Bakwin, in count I, and for tortious interference with contract and with prospective economic advantage arising out of a business relationship against defendants, John D. McCallum and Marshall R. Crohan, in count II. The trial court entered summary judgment in favor of all defendants. Plaintiff raises two issues on appeal: (1) that he is entitled to more than *quantum meruit* recovery for his wrongful discharge as attorney in count I; and (2) that the trial court erred in determining that count II presented no genuine issue of material fact.

The relevant facts contained in the pleadings, affidavits, and discovery deposition of the plaintiff are summarized as follows. Between 1970 and June 30, 1975, plaintiff was engaged in the practice of law both as a sole proprietor and as an employee in the law office of Wil-

liam E. Anderle. The law office of William E. Anderle devoted virtually all of its professional services to the "Morris Family" and the various businesses which members of the Morris family controlled (Morris Family Clientele). During the course of his employment by the law office of William E. Anderle, plaintiff became familiar with and performed many legal services for the Morris Family Clientele. Lysle S. Burk, who for approximately 40 years had been the agent and close, confidential investment advisor to members of the Morris Family Clientele, had numerous discussions with plaintiff that upon Anderle's retirement plaintiff would assume control over the legal matters of the "Morris Family." It had been the practice for many years for the "Morris Family" to maintain a private, captive law firm which occupied and shared office space and personnel with certain of the family members and their agents. In 1972, Edward M. Bakwin, a family member, became the agent for and representative of the Morris Family Clientele upon the death of Edward Morris, who had been the long-time manager of all "Morris Family" business interests.

In early 1975, William E. Anderle, because of his health, was unable to provide full-time legal services for Bakwin and the Morris Family Clientele. In April 1975, plaintiff entered into an oral agreement with Burk, as the agent and representative of Bakwin, whereby plaintiff would provide a law office devoted almost exclusively to providing legal services for the Morris Family Clientele. Plaintiff also entered into a separate agreement with Anderle to purchase his law practice for $40,000. Bakwin orally agreed to employ plaintiff to handle all of the Morris Family Clientele legal business for as long as plaintiff provided adequate legal services. Subsequently, Bakwin and plaintiff agreed that plaintiff would bill for his services at an hourly rate on a monthly basis. The parties also agreed that plaintiff would share office facilities with Burk, Bakwin and Patrick Henry, another member of the Morris family. Generally, plaintiff was to provide legal services to the Morris Family Clientele which included family members, the Darling-Delaware Company, Inc., and its divisions and subsidiaries, and numerous other family businesses, organizations, trusts, and properties in which the Morris Family Clientele had an interest. It was also understood that plaintiff would have to hire additional attorneys to assist him who would be approved by Bakwin or Burk. Plaintiff was then appointed as general counsel for the Darling-Delaware Company, Inc., a major "Morris Family" holding.

Plaintiff commenced his legal services on July 1, 1975, and continued until September 20, 1979, when he was terminated. During that period of time he derived approximately 75 to 80% of his net income

from representation of the Morris Family Clientele. His responsibilities included: supervision of all litigation involving the Morris Family Clientele; the representation of the Morris Family Clientele in antitrust matters, mergers and acquisitions; tax matters involving family members and corporate entities; supervision of policies and legislation affecting the various family businesses; and implementation of a program of preventative legal care.

John D. McCallum became president of Darling-Delaware Company, Inc., in 1976; and Marshall R. Crohan was the secretary-treasurer of the company. During 1976 and until plaintiff's termination in 1979, disagreements arose between plaintiff and McCallum over referral of some of the company's legal matters to outside counsel other than plaintiff. Additionally, McCallum and plaintiff clashed over whether McCallum was to keep plaintiff informed of practices and policies of the various Darling-Delaware divisions, particularly on legal matters referred to outside counsel. In March 1979, plaintiff advised Bakwin, who also was chairman of the board of Darling-Delaware, that certain divisions of the company were in violation of antitrust laws, that certain divisions were being operated in violation of Federal and State environmental protection laws, that certain corporate employees had embezzled money from Darling-Delaware and no action had been taken to discover the exact amount taken or to recover the money. Subsequently, Bakwin met with plaintiff, Crohan, and McCallum to discuss plaintiff's assertions. McCallum informed Bakwin that unless plaintiff was terminated as general counsel for Darling-Delaware, he would resign as president. The board of directors of Darling-Delaware terminated plaintiff as general counsel effective April 20, 1979, and plaintiff was terminated as attorney for the Morris Family Clientele on September 20, 1979. As of September 20, 1979, plaintiff employed four other attorneys, several secretaries and other office personnel, and maintained an office with an extensive library. After his termination, plaintiff states he incurred significant expenses involved in terminating his office lease, moving, providing salary to employees until other employment was secured, and in lost profits.

In count I of his complaint against Bakwin, plaintiff seeks pursuant to a breach of an oral contract of employment, damages for lost profits, expenses incurred in dissolving his law office, and money owed on past legal bills.[1] In count II against McCallum and Crohan,

---

[1] It is agreed by the parties that any money owed on past legal bills will be settled by the parties and is no longer contested in this lawsuit.

plaintiff seeks, pursuant to the legal theories of tortious interference with contract and with prospective economic advantage arising out of a business relationship, damages for expenses incurred in dissolving his law office, for lost past and future profits, and punitive damages.

With regard to count I of the complaint which seeks damages for lost profits and expenses incurred in dissolving his law office, plaintiff contends that he is not limited to *quantum meruit* recovery, and argues that the recent decision of our supreme court in *Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 399 N.E.2d 969, is not applicable under the facts of this case. He contends that in *Rhoades* the attorney-client relationship was for a single legal matter for a single client on a contingent fee agreement, whereas in the instant case the attorney-client relationship was virtually a lifetime employment agreement for nearly full-time representation for a wide variety of legal matters for the Morris Family Clientele.

In *Rhoades* the attorney who was hired on a contingent fee basis was discharged by his client without a single business day elapsing following the signing of their employment contract. The court held that an attorney who is discharged without cause is not entitled to recover contract fees from his former client but is entitled to be paid on a *quantum meruit* basis a reasonable fee for services rendered before discharge. (78 Ill. 2d 217, 230, 399 N.E.2d 969.) Subsequently, in *Department of Public Works v. Exchange National Bank* (1981), 93 Ill. App. 3d 390, 417 N.E.2d 1045, we rejected a discharged attorney's argument that he was entitled to enforce his contingent fee contract with his clients for whom he had done work over a five-year period, stating that "in our view, [*Rhoades*] adopted *quantum meruit* as the measure of compensation for Illinois attorneys discharged by their clients." (93 Ill. App. 3d 390, 393, 417 N.E.2d 1045.) In *In re Marriage of Reczek* (1981), 95 Ill. App. 3d 220, 420 N.E.2d 161, we noted the rule stated in *Rhoades* in a case which did not involve a contingent fee agreement. In *Reczek* the question presented was whether, following an agreed dismissal of dissolution of marriage proceeding, attorney fees based upon a retainer agreement may be awarded to an attorney who has been replaced. We held that the attorney was entitled only to a reasonable fee for his services rendered.

It is clearly evident from the pleadings, affidavits, and plaintiff's deposition that the contract for plaintiff's legal services was oral, did not contain an expression of the compensation that was due plaintiff for his services, and was terminable at will by the "Morris Family." Plaintiff's deposition acknowledged that it was clear that the "Morris Family" could take any of their business to another firm although in

the past they had always maintained a private, captive law firm to provide most of their legal services. Plaintiff has not cited us any authority for the damages he claims under the circumstances present here which result from a client's termination of an at will employment contract with his attorney.

In Illinois, recovery under a *quantum meruit* theory arising from services rendered by an attorney is for the reasonable worth or value of his services as shown by the evidence. (*Greenbaum & Browne, Ltd. v. Braun* (1980), 88 Ill. App. 3d 210, 410 N.E.2d 303; *Slater v. Jacobs* (1977), 56 Ill. App. 3d 636, 371 N.E.2d 1054; *Neville v. Davinroy* (1976), 41 Ill. App. 3d 706, 355 N.E.2d 86.) We would be reluctant to consider appropriate in attorney-client fee cases consequential damages for lost profits and expenses allowed in other breach of contract cases, as suggested by plaintiff, for to do so, in our opinion, would be unjust in holding a client liable for these damages for exercising his right to discharge his attorney at will. As indicated in *Fracasse v. Brent* (1972), 6 Cal. 3d 784, 494 P.2d 9, 100 Cal. Rptr. 385, cited with approval in *Rhoades*, the client's right to discharge his attorney at will is not a breach of contract but a term of the contract implied by law because of the special relationship between attorney and client. (*Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 229, 399 N.E.2d 969.) Thus, the contract is not breached and the damages for termination of an attorney-client relationship under these facts are not governed by normal contract law principles. Although the plaintiff here almost exclusively represented one client, the Morris Family Clientele, we believe that the proper balance between the client's right to discharge his attorney and the attorney's right to compensation under the facts presented, is that the discharged attorney's fees be paid on a *quantum meruit* basis for services rendered before discharge. See *Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 399 N.E.2d 969.

Plaintiff also contends in his appellate brief that he relied to his detriment on this lifetime employment agreement and should be entitled to damages in excess of *quantum meruit* under the theory of detrimental reliance. (See *Jenkins & Boller Co. v. Schmidt Iron Works, Inc.* (1976), 36 Ill. App. 3d 1044, 344 N.E.2d 275; Restatement (Second) of Contracts sec. 90(1) (1981).) This theory was neither pleaded in count I of the complaint nor argued at the trial court level. An appellate court will not consider different theories or new questions raised for the first time on review. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417; *Ayres v. Bituminous Insurance Co.* (1981), 100 Ill. App. 3d 33, 36, 424 N.E.2d 1316; *Frisch*

*Contracting Service Corp. v. Northern Illinois Gas Co.* (1981), 93 Ill. App. 3d 799, 805, 417 N.E.2d 1070.) Nonetheless, even were we to consider this argument, we would reject it, for its application under these facts would only serve to undercut our holding and the rationale for it as discussed above. Since the right of a client to terminate his attorney at will is an implied term of the contract, an attorney may not rely on the continuation of such employment. Accordingly, the trial court properly entered summary judgment for defendant Bakwin on count II.

As to count II of the complaint against McCallum and Crohan, which is based upon a tortious inference with contract and prospective economic advantage arising out of a business relationship, the trial court granted summary judgment for the defendants indicating that it must fail because it relies on count I. Defendants also assert on appeal that the "cornerstone requirement for tortious interference with contract is a breach of the alleged contract," citing *Pfendler v. Anshe Emet Day School* (1980), 81 Ill. App. 3d 818, 401 N.E.2d 1094, and that the court in *Rhoades* followed the reasoning that the client's right to discharge his attorney at will is not a breach of contract but a term of the contract implied by law. (*Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 229, 399 N.E.2d 969.) Plaintiff contends that his theory alleged in count II is not dependent upon count I and he has pleaded and presented sufficient issues of material fact to withstand the defendants' summary judgment motion.

■ Initially, we point out that defendants have not challenged the sufficiency of count II of the complaint to state a cause of action by a motion pursuant to section 45 of the Civil Practice Act. (Ill. Rev. Stat. 1979, ch. 110, par. 45.) Rather, defendants by the procedure of filing a motion for summary judgment pursuant to section 57 (Ill. Rev. Stat. 1979, ch. 110, par. 57) have necessarily assumed that a cause of action has been stated and that they are entitled to a judgment as a matter of law as there is no genuine issue of material fact. (See *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605.) In this context, we must determine whether there are no genuine issues of material fact and defendants are entitled to a judgment as a matter of law.

■ Illinois decisions recognize that third party inducement of breaches of contract or unjustifiable interference by third parties in business relationships between attorneys and clients are actionable. (*Herman v. Prudence Mutual Casualty Co.* (1969), 41 Ill. 2d 468, 244 N.E.2d 809; *Knell v. State Farm Mutual Automobile Insurance Co.* (1975), 32 Ill. App. 3d 491, 36 N.E.2d 568; *Marcus v. Wilson* (1973),

16 Ill. App. 3d 724, 306 N.E.2d 554; see also, generally, Annot., 26 A.L.R.3d 679 (1969).) It is stated in section 766 of the Restatement (Second) of Torts as follows:

> "One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." (Restatement (Second) of Torts sec. 766 (1979).)

The tort of interference with existing or prospective contractual relations requires that the interference be both intentional and improper, and in determining whether the interference is improper or not, section 767 of the Restatement (Second) of Torts states:

> "In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:
>
> (a)the nature of the actor's conduct,
>
> (b)the actor's motive,
>
> (c)the interests of the other with which the actor's conduct interferes,
>
> (d)the interests sought to be advanced by the actor,
>
> (e)the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
>
> (f)the proximity or remoteness of the actor's conduct to the interference and
>
> (g)the relations between the parties."
>
> Restatement (Second) of Torts sec. 767 (1979).

Count II of the complaint alleges, *inter alia*, that "McCallum and Crohan, maliciously and with intent, interfered with the Agreement and destroyed LaRocco's advantageous business relationship with Bakwin and Darling-Delaware Company, Inc., in that they caused Bakwin to breach the Agreement by retaining other lawyers to represent Darling-Delaware Company, Inc.;" that McCallum and Crohan determined, conspired and agreed, between February 1, 1979, and April 20, 1979, to cause Bakwin to terminate the services of LaRocco; and further that McCallum and Crohan caused Bakwin to breach the agreement by wrongfully terminating plaintiff solely to avoid the institution of the legal procedures and remedial actions recommended by plaintiff and to avoid disclosure of their activities to the full board of directors of Darling-Delaware and the Morris Family Clientele.

Upon examination of the affidavits of the parties and the plaintiff's deposition, it is apparent that plaintiff has asserted specific instances of Darling-Delaware divisions hiring their own attorneys, of defendants ignoring plaintiff's responsibility under the agreement to coordinate legal matters of Darling-Delaware and its divisions, and of a threat by McCallum that unless plaintiff was terminated as general counsel he would resign as president. While defendants refute some of these assertions, they also argue in their appellate brief that their actions were not wrongful and as corporate officers they act "with privilege when acting in *** corporate capacity, in good faith, for a proper business purpose." Defendants' contentions only raise issues of material fact which cannot be decided here in a summary judgment motion.

■■ ■ It is also defendants' argument that a "breach" of the contract between plaintiff and Bakwin is a necessary requirement for tortious interference with a contract. In *Pfendler v. Anshe Emet Day School* (1980), 81 Ill. App. 3d 818, 401 N.E.2d 1094, cited to us by defendants, the court found that since there was no breach of the contract to which plaintiff therein was a party, the defendant could not be guilty of inducing a breach of contract. However, plaintiff here has generally alleged both an interference with a contractual relationship and interference with a business relationship between attorney and client. A cause of action for tortious interference with a business relationship need not be based upon an enforceable contract which is interfered with, but it is the interference with the relationship which creates the actionable tort. (See *Kemper v. Worcester* (1982), 106 Ill. App. 3d 121, 435 N.E.2d 827.) Thus, interference with the relationship between an attorney and his client may be actionable even if the relationship is terminable at will.

Under the pleadings, affidavits, and deposition before us, we find there are genuine issues of material fact in dispute to preclude the granting of summary judgment in count II which require us to reverse and remand. Summary judgment for Bakwin in count I is affirmed for the reasons stated above.

Judgment affirmed in part and reversed in part and remanded.

LINDBERG and UNVERZAGT, JJ., concur.