February 4, 1999

NO. 5-97-0877

IN THE 

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_________________________________________________________________

LeFEVRE, ZEMAN, OLDFIELD & SCHWARM   )  Appeal from the

LAW GROUP, LTD., n/k/a LeFEVRE &     )  Circuit Court of

OLDFIELD LAW GROUP, LTD.,            )  Fayette County.  

                                     )  

     Plaintiff-Appellant and         )   

     Cross-Appellee,                 )  

v.                                   )  No. 96-LM-50

                                     )

WAL-MART STORES, INC., d/b/a         )

WAL-MART GROUP HEALTH,               )

                                     )  Honorable

     Defendant-Appellee and          )  Michael R. Weber, 

     Cross-Appellant.                )  Judge, presiding.  

_________________________________________________________________

JUSTICE MAAG delivered the opinion of the court:  

This action was brought by the plaintiff/cross-appellee, LeFevre, Zeman, Oldfield & Schwarm Law Group, Ltd., now known as LeFevre & Oldfield Law Group, Ltd. (Law Group), to adjudicate and enforce an attorney's lien on health care benefits after defendant/cross-appellant, Wal-Mart Stores, Inc., doing business as Wal-Mart Group Health (Wal-Mart), paid benefits directly to health care providers without honoring the attorney's lien.  Wal-Mart petitioned for removal to federal court, but the federal court remanded the case.  Wal-Mart then filed a motion to dismiss, claiming that the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. §1001 
et seq.
 (1994)) preempts the Illinois Attorneys' Lien Act (Illinois Act) (770 ILCS 5/1 (West 1994)).  This motion was denied on April 10, 1997.  The Law Group's motion for summary judgment was denied, and Wal-Mart's motion for summary judgment was granted on July 21, 1997.  The Law Group appeals this order, and Wal-Mart has filed a cross-appeal from the April 10, 1997, order in the event that this court reverses the July 21, 1997, order.  

Suzanne Schmid was a participant in an employee medical benefit plan administered by Wal-Mart Stores, Inc. Associates Health and Welfare Plan (the plan).  The plan provides medical coverage for participants and eligible dependents.  The terms of the plan are set forth in the summary plan description and in the plan that establishes the "welfare program."  It is undisputed that the plan provides that the welfare program shall be controlled by the terms of the summary plan description that is specifically incorporated into the plan document that is offered by Wal-Mart.  It is also undisputed that Wal-Mart's plan is a welfare benefits plan within the meaning of ERISA; therefore, it is governed and administered in accordance with ERISA.  

A complaint was filed in this case on September 3, 1996, because Wal-Mart denied coverage for Schmid for certain health benefits.  The complaint alleged that the Law Group entered into a written contingency-fee contract with Schmid to prosecute or settle claims relative to health insurance benefits provided by defendant, pursuant to a written contract dated April 15, 1994.  Pursuant to the contract, Schmid agreed to pay the Law Group a sum equal to 40% of whatever might be recovered from said claim and 50% of whatever might be recovered if a second trial or an appeal becomes necessary.  The Law Group provided legal services to Schmid in an effort to cause Wal-Mart to pay her health insurance benefits.  The Law Group notified Wal-Mart of the attorney's lien by a letter sent by certified mail to Wal-Mart on February 17, 1995, pursuant to the Illinois Act (770 ILCS 5/1 (West 1994)).   As a direct result of the Law Group's efforts, Schmid's medical providers were paid a total of $60,962.06.  The complaint also alleged that Wal-Mart failed to honor the lien and that the Law Group is entitled to a judgment in the amount of $24,384.82.

On October 17, 1996, Wal-Mart filed a petition for removal, attempting to remove this case to the United States District Court for the Southern District of Illinois.  On January 27, 1997, an order was entered by the district court stating as follows:  

"[T]he Illinois law at issue [the Illinois Act] is only remotely connected to covered plans.  The attorneys' fees lien enforcement statute is not intended to regulate the affairs of ERISA plans, does not restrict the manner in which ERISA plans conduct their affairs, and does not impair the ability of such plans to operate.  If Wal-Mart had honored [the Law Group's] *** lien, that may have reduced the benefits payable to the plan 
participant
, but it would have had no direct economic impact on the 
plan
 itself.  In short, the Illinois law does not `relate to' an ERISA plan and, therefore, is not preempted by ERISA ***."

The federal district court then remanded this cause of action to the circuit court of Fayette County.

On February 18, 1997, Wal-Mart filed a motion to dismiss for failure to state a claim, lack of jurisdiction, and lack of standing, making the same claims that it had made in federal court, which included, 
inter alia
, Wal-Mart's claim that ERISA preempts the Illinois Act.  On April 10, 1997, defendant's motion to dismiss was denied.  

Wal-Mart filed its answer and affirmative defenses on May 30, 1997.  The affirmative defenses again asserted that plaintiff's claim was barred by federal preemption, that plaintiff failed to comply with conditions precedent, that the benefits had been previously assigned by Schmid, and that plaintiff failed to exhaust her administrative remedies pursuant to the plan.  

Both parties filed motions for summary judgment.  Attached to Wal-Mart's motion for summary judgment was a summary plan description and the welfare benefits plan.  The pertinent provisions are as follows:

"ASSIGNMENT

Medical Coverage benefits of this Plan may not be assigned, transferred[,] or in any way made over to another party by a participant.  Nothing contained in the written description of Wal-Mart Medical Coverage shall be construed to make the Plan or Wal-Mart Stores, Inc. liable to any third party to whom a participant may be liable for medical care, treatment, or services.

However, if so authorized in writing by a participant, the Plan Administrator may pay a benefit directly to a provider of medical service instead of to the participant, as a convenience to the participant, in which event all the Company's or Plan's obligations to the eligible participant with respect to such benefit shall be discharged by such payment."

The welfare plan was also attached to Wal-Mart's motion for summary judgment, and the pertinent section, 7.2, states as follows:

"Section 7.2.  
Non-alienation of Benefits
.  Except as specifically provided in a Welfare Program, no benefit, right[,] or interest of any Participant, Dependent[,] or Beneficiary under the Plan shall be subject to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, seizure, attachment[,] or legal, equitable[,] or other process[] or be liable for, or subject to, the debts, liabilities[,] or other obligations of such person, except as otherwise required by law."

The circuit court denied the Law Group's motion for summary judgment and granted Wal-Mart's motion for summary judgment.  Specifically, the court stated as follows:  

"Both parties have concurred that there are no factual disputes and only issues of law remain.  This Court concurs.  The undisputed facts of this case considered with the arguments in support of pl[aintiff]'s mot[ion] for sum[mary] judg[ment] clearly indicate pl[aintif]f has a right to enforce its att[orne]y lien notwithstanding this being an ERISA plan, 
BUT
 
ONLY
 
IF
 the plan participant, Suzanne Schmid, possessed the power to pledge or encumber her benefits under the terms of the plan.  As def[endant] has argued both orally and in its memorandum, this court finds [that] the `spendthrift' provisions of the plan denied Suzanne Schmid the power or legal right to pledge or encumber her benefits under the plan to satisfy her attorney fees.  For these reasons, pl[aintif]f's  motion for summary judgment is denied[,] and def[endant]'s motion for summary judgment is granted."  (Emphasis in original.)  

On August 7, 1997, the Law Group filed a section 2-1203 motion after judgment in a nonjury case (735 ILCS 5/2-1203 (West 1996)).  The posttrial motion raised the issue that the circuit court's ruling was contrary to public policy.  The circuit court denied this motion on September 23, 1997.  The circuit court noted that the Law Group's strongest argument was its public policy argument and stated that it was not appropriate for it to decide the case on public policy grounds.  

Review is 
de novo
 in appeals from summary judgment rulings.  
Berlin v. Sarah Bush Lincoln Health Center
, 179 Ill. 2d 1, 7, 688 N.E.2d 106, 108 (1997).  "Summary judgment is to be granted only if the pleadings, affidavits, depositions, admissions, and exhibits on file, when reviewed in the light most favorable to the nonmovant, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  
Berlin
, 179 Ill. 2d at 7, 688 N.E.2d at 108; see 735 ILCS 5/2-

1005(c) (West 1994).  Since summary judgment is such a drastic means of disposing of litigation, it must be clear that the moving party is truly entitled to such remedy.  
Berlin
, 179 Ill. 2d at 7, 688 N.E.2d at 108-09.  

While it is true that there is no dispute regarding the facts of this case, it is clear that Wal-Mart was not entitled to judgment as a matter of law.  The real question in this case is whether the "ASSIGNMENT" portion of Wal-Mart's plan and section 7.2 of the plan precluded the Law Group's attorney's lien from attaching to Schmid's settlement proceeds.  

It is clear that the aforementioned provisions in Wal-Mart's plan state that employees cannot assign their benefits.  After reviewing the record, however, we disagree with Wal-Mart's assertion that Schmid's contract with her attorney was an assignment.  

In 
Department of Public Works v. Exchange National Bank
, 93 Ill. App. 3d 390, 417 N.E.2d 1045 (1981), the circuit court, in an eminent domain proceeding, had directed that a portion of funds be deposited by the condemning body and held subject to hearing on a petition to enforce an attorney's lien.  The parties that were entitled to the funds appealed, and the attorney cross-appealed.  This court held that the attorney had neither a statutory nor an equitable attorney's lien to enforce against the condemnation award.  However, in making that determination, this court stated, "There is a clear distinction between an assignment of a portion of a fund and a mere personal promise by the client to pay attorney's fees in the amount of a portion of the fund recovered or collected."  
Department of Public Works
, 93 Ill. App. 3d at 394, 417 N.E.2d at 1048.  A personal contingent fee agreement does not grant an attorney an equitable lien against the fund the client might draw upon to pay attorney fees.  
Department of Public Works
, 93 Ill. App. 3d at 394, 417 N.E.2d at 1048.  This court then pointed out that the plain language in the contract in that case stated that the plaintiff agreed to pay an amount equal to 28% of any recovery over $132,200.  The 
Department of Public Works
 court stated that the contract in that case constituted nothing more than a personal promise to pay for legal services and did not purport to 
assign
 an equitable interest in the condemnation fund.  

Similarly, although the 
Lewsader v. Wal-Mart Stores, Inc.
, 296 Ill. App. 3d 169, 180, 694 N.E.2d 191, 198 (1998), decision is distinguishable from the 
Department of Public Works
 decision on other grounds, the 
Lewsader
 court reaffirmed that a client's promise to pay "an amount equal to" a certain percentage of the recovery "constituted nothing more than a personal promise to pay for legal services and did not purport to 
assign
 an equitable interest."  (Emphasis added.)  

In the case at hand, Schmid's contract with the Law Group states, 
inter alia
, as follows:  "In consideration for services rendered and to be rendered, I agree to pay my attorney a sum equal to 40 percent (40%) of whatever may be recovered from said claim either by suit, settlement, or in any other manner, and 50 percent (50%) of whatever may be recovered if a second trial or an appeal becomes necessary."  This contract was nothing more than a personal promise by Schmid to pay for legal services.  Hence, it was not an assignment as the trial court believed.

Additionally, Wal-Mart relies on 
McKeown v. Pridmore
, 310 Ill. App. 634, 35 N.E.2d 376 (1941), for the proposition that the antialienation provision in its plan, section 7.2, created a "spendthrift trust."  In 
McKeown
, an attorney tried unsuccessfully to enforce an attorney's lien where a testamentary trust had a spendthrift clause that was held to be effective to prevent the assignment of any interest in the trust by the beneficiary.  
McKeown
 is distinguishable from the case at bar.  Even assuming that the aforementioned provision created a spendthrift trust, the 
McKeown
 decision dealt with a testamentary spendthrift trust and did not deal with health care benefits.  Moreover, in the 
McKeown
 decision, there was not a provision, as we have in the instant case, that makes the nonalienation-of-benefits provision ineffective "when otherwise required by law."  The Illinois Act is a requirement of law (770 ILCS 5/1 (West 1994)), and there is no question that the lien was filed in accordance with that statute.  Hence, the lien should have been honored.  See 
Robert S. Pinzur, Ltd. v. The Hartford
, 158 Ill. App. 3d 871, 511 N.E.2d 1281 (1987) (court held that insurance company acted at its peril when paying health care benefits directly to providers in disregard of the notice of attorney's lien).  

We note parenthetically that in Wal-Mart's cross-appeal, they state that since Schmid never personally received any money from Wal-Mart, there was no money for the attorney's lien to attach to.  It is clear that the Illinois Act states that the attorney lien "shall attach to *** any money or property which may be recovered, on account of such suits, claims, demands[,] or causes of action, from and after the time of service of the notice."  770 ILCS 5/1 (West 1994).  It is clear that if Schmid's benefits had not been paid by Wal-Mart, she would have been responsible for paying the health care providers.  The Law Group, on Schmid's behalf, demanded that her benefits be paid, and they eventually were paid.  Hence, the Law Group recovered money for Schmid, and Wal-Mart acted at its peril when it paid the benefits directly to the providers instead of honoring the Law Group's attorney's lien.  See 
The Hartford
, 158 Ill. App. 3d at 871, 511 N.E.2d 1281.  

As we previously stated, in the proceedings below, Wal-Mart filed a petition to remove this case to federal court, arguing that ERISA preempts the Illinois Act.  The petition for removal was denied, and Wal-Mart later filed a motion to dismiss in the circuit court, arguing the same issue.  The circuit court denied Wal-Mart's motion to dismiss on April 10, 1997.  Wal-Mart has cross-appealed that order in the event that this court reverses the July 21, 1997, order, as we have.  In Wal-Mart's cross-appeal, several collateral issues are raised.  Among them is Wal-Mart's claim that the Illinois Act is preempted by ERISA.  Wal-Mart utilizes the following ERISA language to support its argument:

"Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter 
relate to
 any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."  (Emphasis added.)  29 U.S.C. §1144(a) (1994).

Wal-Mart contends that since the Illinois Act "relates to" employee benefit plans within the meaning of section 514(a) of ERISA (29 U.S.C. §1144(a) (1994)), ERISA preempts the Illinois Act.  We disagree.

The gist of Wal-Mart's claim is that since ERISA has an attorney fees provision, that provision controls all attorney fee issues, and because attorney fees are covered pursuant to the ERISA statute, the Illinois Act is preempted.  The ERISA attorney fees provision is as follows:

"(1) In any action under this subchapter *** by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. §1132(g)(1) (1994).

"A law `relates to' an employee benefits plan, in the normal sense of the phrase, if it has a connection with 
or
 reference 
to
 such a plan."  (Emphasis in original.)  
Mackey v. Lanier Collection Agency & Service, Inc.
, 486 U.S. 825, 829, 100 L. Ed. 2d 836, 108 S. Ct. 2182, 2185 (1988) (United States Supreme Court determined that ERISA preemption falls short of barring application of a general state garnishment statute to participants' benefits in the hands of an ERISA welfare benefit plan).  Accord 
New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.
, 514 U.S. 645, 131 L. Ed. 2d 695, 115 S. Ct. 1671 (1995).   

The Illinois Act states:  

"Attorneys at law shall have a lien upon all claims, demands[,] and causes of action, including all claims for unliquidated damages, which may be placed in their hands by their clients for suit or collection, or upon which suit or action has been instituted, for the amount of any fee which may have been agree upon by and between such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee, for the services of such suits, claims, demands[,] or causes of action, plus costs and expenses.  ***  Such lien shall attach to any verdict, judgment[,] or order entered and to any money or property which may be recovered, on account of such suits, claims, demands[,] or causes of action, from and after the time of service of the notice."  770 ILCS 5/1 (West 1994).  

In the instant case, it is clear that the Illinois Act does not refer to ERISA.  Hence, we must determine if the Illinois Act has a connection with ERISA.  After carefully reviewing the Illinois Act, we have determined that it does not.

By arguing that ERISA preempts the Illinois Act, Wal-Mart fails to understand that the Illinois Act is much like a garnishment statute, and it is clear that Congress did not intend to forbid the use of state-law mechanisms of executing judgments against ERISA welfare benefit plans, even when those mechanisms prevent plan participants from receiving their benefits.  
Mackey
, 486 U.S. at 828-41, 100 L. Ed. 2d 836, 108 S. Ct. at 2185-91; accord 
Travelers Insurance Co.
, 514 U.S. 645, 131 L. Ed. 2d 695, 115 S. Ct. 1671 (where state law has only tenuous, remote connection with covered plans, such state laws do not have the requisite "connection with" ERISA plans to trigger preemption).  

Likewise, the Illinois Act is similar to the common-fund-

doctrine cases where courts have determined that an attorney is entitled to his fee even when the case concerns issues that are covered by ERISA.  See 
Blackburn v. Sundstrand Corp.
, 115 F.3d 493 (7th Cir. 1997) (Illinois common-fund doctrine not preempted by ERISA to extent that it allowed beneficiaries to reduce their obligation to repay medical expenses pursuant to subrogation provision by one-third based on beneficiaries' payment of attorney fees); 
Scholtens v. Schneider
, 173 Ill. 2d 375, 671 N.E.2d 657 (1996) (ERISA does not preempt application of common-fund doctrine to self-funded employee benefit plans).

Although we recognize that this case is not a common-fund-

doctrine case, it is similar to the common-fund-doctrine cases for the following reasons.  An employee benefits plan is in the nature of a contractual agreement between the employer, the plan and its fiduciaries, and the participants and beneficiaries.  Like the common-fund-doctrine cases, it is clear that the claim for attorney fees in the instant case did not arise out of that contractual agreement between the aforementioned parties.  Instead, the claim for attorney fees arose independently of the benefit plan.  The Law Group that represented Schmid in these proceedings and negotiated a settlement and obtained the proceeds from the plan simply invoked its right to the payment of fees for services rendered in recovering Schmid's benefits.  This right of the Law Group to a lien pursuant to the Illinois Act arises independently of the benefit plan.  Accordingly, applying the Illinois Act in the circumstances of this case does not alter the relationship or agreements formulated among the principal ERISA entities (
e.g.
, the employer, the plan fiduciaries, and the participants).  It merely affects the relations between one of the parties--the participant, Schmid--and an outside party.  The action of the Law Group is a separate and distinct action against Wal-Mart for unpaid fees when Wal-Mart was aware of the attorney lien.  This action is wholly independent of and unrelated to the underlying benefit plan.  Hence, we conclude that the Illinois Act does not dictate or restrict the manner in which ERISA plans are structured or administered.  See 
Scholtens
, 173 Ill. 2d at 390, 671 N.E.2d at 664-65; see also 
Luxemburg v. Hotel & Restaurant Employees & Bartenders International Union Pension Fund
, 398 N.Y.S.2d 589 (1977) (court allowed an attorney to recover unpaid legal fees from an ERISA plan based upon an express contract).  "ERISA does not require the creation of a fully insulated legal world that renders all state law preempted whenever there is a plan in the picture."  
Scholtens
, 173 Ill. 2d at 392, 671 N.E.2d at 666.

The Law Group's position, in reality, is even stronger than the attorneys' position in the common-fund-doctrine cases.  As we previously stated, this case is more like a garnishment of money in the hands of a plan administrator, reaching the benefits of the participant before they are distributed, than an attempt to apply the common-fund doctrine on funds after they have been distributed.  If Wal-Mart had honored the attorney's lien, it would have simply reduced the benefits payable to and on behalf of its participant, Schmid.  The payment of the lien would have had no economic impact on Wal-Mart's plan and would have cost Wal-Mart nothing.  Wal-Mart even had advance notice of the lien, unlike in common-fund-doctrine cases, and had notice of plaintiff's claim before paying the benefits.    

For the foregoing reasons, it is clear that ERISA does not preempt the Illinois Act because the Illinois Act does not have  the requisite connection with ERISA to trigger preemption. 

Finally, as a matter of public policy, it is imperative that people in Schmid's position be able to obtain the services of an attorney when their insurer denies coverage for their medical benefits.  It is not an unusual circumstance for one to find  herself in financial distress after having a serious medical condition.  Wal-Mart's position is untenable.  If an insurer denies its insured benefits, and the insured has been reduced to poverty as a result of the illness, there would be no way for the insured to protect her rights if she cannot hire an attorney on a contingency fee basis.  The only parties benefitting from Wal-

Mart's position are the insurance companies.  If we adopted that position, every person rendered impecunious as a result of an accident or illness could be denied coverage from its insurer and have no recourse for proving that the benefits should have been paid.  Contingency fee contracts "are the poor man's key to the courthouse door", and they enable persons who cannot afford to retain an attorney on an hourly or fixed-fee basis to pursue their claims with competent counsel.  Thus, contingency fee agreements are rooted in our commitment to provide equal justice for both those of moderate means and the wealthy.  
Leonard C. Arnold, Ltd. v. Northern Trust Co.
, 116 Ill. 2d 157, 165, 506 N.E.2d 1279, 1281 (1987).  

In the instant case, it is clear that Wal-Mart denied Schmid's claims.  After the Law Group became involved in this case, Schmid's medical providers were paid.  Had it not been for the Law Group's efforts, Schmid's medical providers would have received nothing.  We cannot imagine why a medical provider would object to receiving reduced payments when without the attorney's efforts they would have received nothing.  To hold that Wal-Mart's position is the correct one in this case would be to allow Wal-Mart to use its superior economic leverage to deny claims and potentially cause medical providers to withhold treatment.  Moreover, it is clear that Wal-Mart's position is an attempt to thwart ERISA's fundamental purpose, which is "to protect employees, not to provide loopholes through which ERISA plans can avoid paying their debts."  
Scholtens
, 173 Ill. 2d at 396, 671 N.E.2d at 667.

For the foregoing reasons, we affirm the circuit court's denial of Wal-Mart's motion to dismiss on April 10, 1997.  Additionally, we reverse the circuit court's order of July 21, 1997, granting Wal-Mart's motion for summary judgment, and we remand for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

GOLDENHERSH and HOPKINS, JJ., concur.