NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 30, 2008
Decided February 20, 2008

**Before**

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 07-1095

| | |
|---|---|
| KENNETH MATTHEWS, | Appeal from the United States |
| *Plaintiff-Appellee,* | District Court for the |
| | Northern District of Illinois, |
| *v.* | Eastern Division. |
| | |
| HOMECOMINGS FINANCIAL | No. 03 C 3115 |
| NETWORK, INC. *et al.,* | |
| *Defendants-Appellees,* | Ronald A. Guzman, |
| | *Judge.* |
| APPEAL OF: KARRIS A. BILAL. | |

**ORDER**

Attorney Karris A. Bilal represented Kenneth Matthews, the plaintiff in the litigation underlying this dispute over attorney's fees. Bilal, who says he was not paid for his services, claims to have perfected an attorney's lien on settlement money that the defendants paid to Matthews. He also argues that he is entitled to an equitable lien or a quantum meruit recovery for the value of his services. The district court dismissed Bilal's case, ruling that he did not comply with the strict requirements of the Illinois Attorneys

Lien Act, precluding any statutory lien on the settlement. The court also held that Bilal failed to establish a basis for an equitable recovery. Bilal appeals.

Bilal represented Matthews in the underlying litigation--a suit alleging, among other things, violations of the Fair Debt Collection Practices Act and the Truth in Lending Act. Bilal represented Matthews between August 2004 and February 2006, when Matthews moved to discharge Bilal as his counsel. The next month, Bilal himself filed a motion to withdraw, which the court promptly granted. In April 2006, one month after the court severed their relationship, Bilal served a notice on Matthews and counsel for the various defendants in the underlying suit--but not the defendants themselves--claiming a statutory lien of $47,960 on any settlement paid to Matthews.

Matthews filed a motion to quash Bilal's asserted lien. A magistrate judge granted the motion after Bilal offered no opposition. Bilal later filed a motion to alter or amend judgment, claiming that he never learned of the motion to quash. The district court then granted Bilal a chance to contest the motion. Bilal argued that the notices he served met the requirements to perfect a statutory lien on any settlement proceeds. Bilal also contended, by affidavit, that he and Matthews entered into a written contract in which Matthews promised to pay Bilal the greater of: (1) one-third of any settlement, or (2) his hourly rate multiplied by the time for the work he performed. Finally, without submitting the contract itself or any evidence of the time he spent on the case, he claimed in the alternative that he was entitled to either an equitable lien or a quantum meruit recovery for the value of his services.

The district court adopted the magistrate judge's recommendation that Bilal had failed to meet the requirements for a perfected statutory attorney's lien. The district court also accepted the magistrate judge's recommendation that Bilal was precluded from seeking an equitable lien because he claimed to have entered into a written contract that he did not produce. Neither the magistrate judge nor the district court explicitly addressed Bilal's quantum meruit claim.

Before examining the merits of Bilal's claims, we must ensure that we have jurisdiction over a fee dispute governed by state law. We have recognized that, because of a high degree of relatedness, supplemental jurisdiction extends to suits over attorney's fees for work in underlying litigation that is already within the court's jurisdiction. *See Abbott Labs. v. CVS Pharmacy, Inc.*, 290 F.3d 854, 858 (7th Cir. 2002); *Rissman v. Rissman*, 229 F.3d 586, 587-88 (7th Cir. 2000); *Clarion Corp. v. Am. Home Prods. Corp.*, 464 F.2d 444, 445 (7th Cir. 1972) (specific to liens asserted in Illinois); *see also Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1298-1301 (7th Cir. 1995). Thus, federal jurisdiction is secure.

Turning to the merits, Bilal reasserts his argument that he complied with the statutory requirements for perfecting an attorney's lien. In Illinois, these requirements are set out in 770 Ill. Comp. Stat. 5/1. Because the lien is governed by statute, strict compliance is necessary to perfect a lien. *People v. Philip Morris, Inc.*, 759 N.E.2d 906, 911 (Ill. 2001); *Progressive Universal Ins. Co. v. Taylor*, 874 N.E.2d 910, 915 (Ill. App. Ct. 2007). An attorney is required to serve notice of the lien on the defendants during the pendency of the attorney-client relationship. *Rhoades v. Norfolk & Western Ry.*, 399 N.E.2d 969, 973-74 (Ill. 1979); *In re Chicago Flood Litig.*, 682 N.E.2d 421, 426 (Ill. App. Ct. 1997); *Dep't of Pub. Works v. Exch. Nat'l Bank*, 417 N.E.2d 1045, 1048 (Ill. App. Ct. 1981). Bilal failed in this regard: he did not provide notice of a lien to anyone until after both he and his client moved for his withdrawal <u>and</u> the court granted the motion. Moreover, an attorney is required to serve notice on the defending parties in the underlying litigation, *see Rhoades*, 399 N.E.2d at 973; *TM Ryan Co. v. 5350 South Shore, L.L.C.*, 836 N.E.2d 803, 807 (Ill. App. Ct. 2005), and some courts have interpreted this language to mean that service on the defendants' counsel is not sufficient, *see In re Del Grosso*, 111 B.R. 178, 182 (Bankr. N.D. Ill. 1990) (citing *Cazalet v. Cazalet*, 54 N.E.2d 61, 63 (Ill. App. Ct. 1944)). Bilal served the defendants' counsel but not the defendants themselves, so he may have failed in this regard as well.

Bilal's response is that his belated service should not matter because Matthews terminated the attorney-client relationship in bad faith, an action that Bilal could not control. Aside from Bilal's failure to cite any case excusing untimely notice for this reason, Bilal offers no reason why he could not have served notice of the lien during the year and a half time that he was counsel, in the exercise of ordinary prudence. In any event, Bilal himself asked to terminate the attorney-client relationship. He could have served his lien notice before *he* sought to end the relationship, but did not. Thus, the district court properly quashed any purported interest Bilal had in a statutory lien.

Bilal also renews his argument that he was entitled to an equitable lien. To qualify for an equitable lien, an attorney must establish that an equitable assignment exists under which the client assigned to the attorney a portion of a fund. *See Wegner v. Arnold*, 713 N.E.2d 247, 252 (Ill. App. Ct. 1999). A mere promise to pay does not confer an assignment of a portion of a fund. *See, e.g.*, *Wegner*, 713 N.E.2d at 252; *LeFevre, Zeman, Oldfield & Schwarm Law Group v. Wal-Mart Stores, Inc.*, 706 N.E.2d 130, 133 (Ill. App. Ct. 1999). Bilal did not consider or analyze these principles for the district court or for this court. His affidavit only paraphrases any written agreement between him and Matthews and does not provide its specific terms, which are necessary to determine if an assignment existed. The existence of an assignment can turn on minute differences in contractual language that anchor the attorney's interest in either the party's promise or the proceeds of the litigation. *See Homes Federal Savings and Loan Ass'n of Centralia v. Cook*, 525 N.E. 2d 151, 153 (Ill. App. Ct. 1988)

(reviewing that contractual statement, "[w]e agree to pay you . . . an amount equal to 28%" of recovery was only a promise to pay, but contractual statement, "[we] agree to pay . . . a contingent fee of 40%," was an equitable assignment).  Bilal had both the opportunity and the burden to provide the district court with the evidence necessary to determine if his equitable lien claim was valid.  He failed to do so.  Therefore, there is no reason to disturb the district court's conclusion that Bilal is not entitled to an equitable lien.

Lastly, Bilal advances the argument that he is entitled to a quantum meruit recovery of the value of his services.  The district court never addressed this contention, possibly because Bilal never fully developed it.  Illinois courts have held that, in general, when an attorney has a written fee agreement, quasi-contractual claims for recovery of fees must fail.  *See, e.g., Hedlund & Hanley, LLC v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 876 N.E.2d 1, 7 (Ill. App. Ct. 2007).  But when a client discharges an attorney working for a contingency fee, the attorney is entitled under quantum meruit to be paid a reasonable fee for his or her services, regardless of whether a written contract exists.  *See Rhoades*, 399 N.E.2d at 974-75; *In re Estate of Horwitz*, 863 N.E.2d 842, 846 (Ill. App. Ct. 2007); *Thompson v. Hiter*, 826 N.E.2d 503, 509 (Ill. App. Ct. 2005); *Leoris and Cohen, P.C. v. McNiece*, 589 N.E.2d 1060, 1064-65 (Ill. App. Ct. 1992) (breakdown in attorney-client relationship that results in attorney's withdraw from contingent fee case still permits attorney to receive fees on quantum meruit basis).  Even when a noncontingency, written contract exists, an attorney discharged without cause does not recover the contract fee but instead a reasonable fee for the services rendered.  *See Rhoades*, 399 N.E.2d at 974-75; *Keck and Assocs., P.C. v. Vasey*, 834 N.E.2d 486, 488 (Ill. App. Ct. 2005).

The problem for Bilal, however, is that he once again did not present the district court with the evidence needed to assess the market value of his services, as is required.  *See Indiana Lumbermens Mut. Ins. Co. v. Reinsurance Results, Inc.*, No. 07-1823, 2008  WL 141795 at *5 (7th Cir. Jan. 16, 2008).  He never submitted, or even promised to submit, any evidence of the time he devoted to the underlying litigation, the dates on which his work occurred, or the details of the tasks he performed.  *See Anderson v. Anchor Org. for Health Maint.*, 654 N.E.2d 675, 681-82 (Ill. App. Ct. 1995) (quantum meruit recovery can be determined based upon services performed, time expended, hourly rate, skill and standing of attorney, nature and difficulty of case, responsibility required, customary charges for similar services, and benefit to client).  Nor does he try to excuse or explain that failure.  He merely alleges that he deserves over $47,000 and refers generally to some filings he prepared.  But he has never explained how he calculated this number and why it is market value.  Furthermore, his selection of this number seems unduly ambitious:  at oral argument Bilal stated that Matthews' case was settled for around only $30,000.

For the foregoing reasons, the judgment of the district court is AFFIRMED.